# Addams *against* Heffernan.

Land charged with the payment of an annuity, having descended to the heirs at law, of whom the annuitant was one, is not thereby wholly discharged from the payment of the annuity, but only *pro tanto*, which the annuitant took as heir at law.

*Quere*, if the annuitant had acquired the same interest by purchase, and not by the act of the law?

One who has a lien upon two funds, and suffers one of them to be disposed of by a judicial sale, and the proceeds applied to junior incumbrances, is not thereby precluded from having the amount of his claim out of the second fund, when converted into money by a judicial sale.

When land is taken at the valuation by the eldest son, under the intestate laws, and he enters into a general recognizance for the payment of the shares of the respective heirs, one of whom is a *feme covert*, a bond given to her husband at

IX.—2 U*

[Addams v. Heffernan.]

the same time for the amount of her share, is not such a reduction into possession by the husband as to divest the right of the wife surviving her husband; and she, upon a judicial sale of the land bound by the recognizance, is entitled to receive the amount secured by the recognizance.

When a feigned issue is directed to try facts, no exception can be taken by either party in interest in regard of the parties to, or form of, the issue ordered by the court.

Where a sum of money is set apart and charged upon land, the interest of which is to be paid annually, if it be not punctually paid, the annuitant is entitled to recover interest upon the annuity from the time it was payable.

ERROR to the common pleas of *Berks* county.

George W. Heffernan, administrator of Catharine Heffernan, deceased, against Elijah Deckert and Peter Addams, administrators of John Addams, deceased.

This was an issue under the act of assembly of the 16th of April 1827, to try the right of Catharine Heffernan to the money in court, arising from the sale of the real estate of William Singer, viz:

" It is agreed that the issue in this case be made up by the plea of *non assumpsit* and issue, and that the same be tried without any declaration or further plea. If the said plaintiff is entitled to any part, the jury to ascertain the sum, and find the same accordingly; and if entitled to no part, the jury are to find for the defendants: and either party to have the right of suing out a writ of error."

The plaintiff, to maintain the issue on his part, gave in evidence the Will of Henry Singer, Sen., deceased, dated the 13th day of September 1799, and proved the 23d day of June 1800.

In the first item he disposes of his personal property to his sons, Henry, John, George, William, and his daughter Eve.

In the second item he devises two tracts of land in Alsace township, one of one hundred acres and the other of fifty acres, to his son " Henry Singer, his heirs and assigns forever, he or they paying thereout and therefor, the sum of 1000 pounds in gold or silver money, in yearly payments of 100 pounds, the first payment to be made in one year after my decease, which is to be divided among my aforesaid five sons and daughter Eve, as hereinafter mentioned,"—and gives him the two bay mares and 100 pounds in specie.

In the third item he devises to his sons John and George, and his daughter Eve, " the house and lot, and parts thereon in Reading, his two acre meadow ground in Cumru, his part of the land in Alsace township, which he held in common with Jacob Graul, as tenants in common forever," and values this devise and bequest at 650 pounds.

In the fourth item he devises his lands in Fishing Creek, in Northumberland county, which he held in common with Jacob Graul, to his said children, Henry, John, George, William and Eve.

The fifth item is as follows:—" I give and bequeath unto my daughter Catharine the sum of five shillings, as and for her inheritance out of my estate, both real and personal: *Provided, never-*

[Addams v. Heffernan.]

*theless*, that the two last payments which my son Henry is to pay for the land hereby devised to him, shall remain unpaid and charged on said land; and my said son Henry Singer, his heirs and assigns, are to pay the interest thereof, from the time said payments became due, unto my said daughter Catharine, yearly during her natural life."

He directs, in the seventh item, the money arising from the sale of his personal estate, and the eight first payments his son Henry is to pay, (after his debts and funeral expenses are thereout paid,) to be divided among his said five named children, Henry, John, George, William, and Eve, as follows:—Henry shall first have and receive his 100 pounds, before bequeathed to him, which sum he gives him beforehand, and not to be included in his share. Then William shall receive so much until he is equal with each his said three children, John, George, and Eve, agreeably to the devise to them before mentioned; and then Henry is to receive so much until he is equal with each of his said children, John, George, William, and Eve, and then they shall receive equal yearly, until said money be divided equally between my said children, Henry, John, George, William, and Eve.

In the seventh item, he orders and directs that, in case Henry does not accept the devise to him as aforesaid, then he gives and devises the said lands unto his son William, his heirs and assigns forever, upon the same conditions and payments as he has ordered and directed in his devise of it to Henry, (reserving in the dividend to Henry the said 100 pounds beforehand,) and in case of William's refusal, then his executors were directed to sell the same, and then the proceeds to be divided among Henry, John, George, William and Eve, in the manner before directed; and the said 200 pounds from which his daughter Catharine is to reecive the interest is to remain charged on said lands, and the purchaser, or his heirs or assigns, to pay the interest yearly, from the time Henry was to pay the same.

Lastly, he nominates his sons Henry and George, and Peter Filbert, executors, &c.

Also, the petition of John Singer, brother of Henry Singer, Jun., deceased, dated the 10th day of August 1810, setting forth that the said Henry Singer died intestate on the 1st day of July 1807, without issue, leaving a widow, and brothers and sisters, John, George, William, Eve, and Catharine, intermarried with Hugh Heffernan, and seised of real estate, to wit, the one hundred acres and the fifty acres devised to Henry Singer by the will of Henry Singer the elder.

November 9, 1810, inquisition returned, confirmed, and property adjudged to John Singer, at 1800 pounds, the valuation thereof, &c. Peter Filbert and John Goodhart approved as sureties.

Also, a recognizance dated the 9th day of November 1810, by John Singer, for 3600 pounds, conditioned to pay the others, heirs, &c. of Henry Singer, their respective shares.

Also, the Will of John Singer, deceased, dated the 25th day of January 1819, and proved the 29th day of January 1822, devising the real estate mentioned in the said recognizance unto William Singer and Daniel Strœble, &c.

Also, a record of a judgment by Henry Seiler, administrator of Henry Seiler, against Daniel Strœble, to November term 1822, No. 12, and *scire facias*, &c.; and executions issued thereon, &c.

*Venditioni exponas* to November term 1828, No. 22. Return, " Daniel Strœble's undivided moiety sold to John Addams for 121 dollars." November 15th 1828, deed from sheriff to Addams acknowledged for the one hundred acres.

Also, the record of an action of partition in the common pleas of Berks county, to January term 1831, No. 24, by John Addams against William Singer: judgment of partition, and writ of partition awarded, returnable to November term 1831. Writ of partition returned, valuing and appraising the property at 3500 dollars.

On the 11th day of January 1832, inquisition confirmed; same day William Singer elected the premises at the valuation, which the court adjudged to him, subject to the one half of the valuation-money due to John Addams, being 1750 dollars, with interest.

Also, the record of an action by Elijah Dechert and Peter Addams, administrators of John Addams, deceased, against William Singer, to January term 1834, No. 160. January 11, 1836, verdict for plaintiff for 2170 dollars, and judgment thereon, which suit being brought for the recovery of the aforesaid valuation-money due to the said John Addams. *Fieri facias* to April term 1835, levied on real estate, and condemned, as per inquisition annexed.

*Venditioni exponas* to August term 1836. Return, " Property sold to Daniel Strœble, and sale set aside."

*Alias venditioni exponas* to November term 1836. Return, " Property sold to Henry Seiler for 4545 dollars; conditions of sale not complied with, therefore property unsold for want of buyers."

*Pluries venditioni exponas* to January term 1837. Return, " Property sold to Henry W. Smith, Esq. for 3716 dollars, being the one hundred acres.

January 13, 1827, the sheriff paid into court, for distribution, 3635 dollars 82 cents, first deducting 75 dollars 18 cents, the amount of costs.

The widow of Henry Singer died on the 10th day of May 1831, and Catharine Heffernan died on the 11th day of January 1836: Hugh Heffernan, her husband, had died before that time.

And thereupon the plaintiff rested.

And the defendant, having opened his case, gave in evidence another writ of *venditioni exponas*, issued on the judgment of Henry Seiler's administrators against Daniel Strœble, to January term 1828. Returned, " Fifty acres of woodland sold to John Dotterer for 150 dollars." Sheriff's deed to John Dotterer acknowledged the 16th day of January 1828.

[Addams v. Heffernan.]

The defendants then further gave in evidence several powers of attorney from Hugh Heffernan and Catharine his wife, to Hugh Henry Heffernan, authorizing him to receive the annuity, and his receipts for the payment each year of the amount due, up to May 1814, and then also gave in evidence the following power of attorney and release:

" Know all men by these presents, that we, Hugh Heffernan and Catharine his wife, formerly Catharine Singer, of the township of Wayne, county of Crawford, and commonwealth of Pennsylvania, have nominated and appointed, and by these presents do nominate, constitute, and appoint, and in our place and stead put and depute Hugh Henry Heffernan, of the same place, our true and lawful attorney, for us and in our name, and to our use, to ask, demand, sue for, recover, and receive all such sum and sums of money, debts, dues, accounts, and other demands whatsoever, which are or shall be due, owing, payable, and belonging to us, or detained from us, by any manner of ways or means whatsoever, especially all the share part or dividend of the said Catharine Heffernan, formerly Catharine Singer, of, in, and to the estate of Henry Singer, late of the county of Berks (whether the same be now real or personal), in the hands and possession of John Singer, administrator of the estate of the said Henry Singer, deceased, being—and we hereby further empower and authorize our said attorney to release our right, title, interest, property, claim, and demand, of, in, and to the estate whereof the said Henry died seised, unto the aforesaid John Singer, his heirs and assigns—and also for us, and in our names, place, and stead, and as our proper act and deed, to sign, seal, and deliver, and acknowledge all such deed or deeds of release as shall or may be necessary in and about the premises, giving and granting unto our said attorney, by these presents, our full and whole power, strength, and authority about the premises, to have, use, and take all lawful ways and means, in our name, for the purpose aforesaid; and upon the receipt of any such debts and dues, or sums of money, acquittance or sufficient discharge, in our name to make, seal, and deliver—and generally all other acts, things, and devices in law whatsoever needful or necessary to be done, in and about the premises, for us and in our name to do, execute, and perform, as fully, largely, and amply, to all intents and purposes, as we ourselves might or could do, if personally present, hereby ratifying, allowing, and confirming all and whatsoever our said attorney shall lawfully do in and about the premises by virtue hereof. In witness whereof, we have hereunto set our hands and seals, the tenth day of June, in the year of our Lord one thousand eight hundred and fourteen.

           " HUGH HEFFERNAN,    [L. S.]
           " CATHARINE HEFFERNAN,  [L. S.]

" Sealed and delivered in the presence of
        " PIETU HEIDEKOPU,
        " NOAH WADE."

[Addams v. Heffernan.]

" Know all men by these presents, that I, Hugh Henry Heffernan, of the township of Wayne, county of Crawford, and commonwealth of Pennsylvania, yeoman, sendeth greeting.—Whereas Henry Singer, in his lifetime, made his last will and testament, bearing date the thirtieth day of December, in the year of our Lord one thousand seven hundred and ninety-nine, wherein and whereby, amongst other things, he did give and bequeath in the words following, to wit:—' Item, I give and bequeath unto my daughter Catharine the sum of five shillings, as for her inheritance out of my estate, both real and personal. *Provided, nevertheless,* that the two last payments which my son Henry is to pay for the land hereby devised to him, shall remain unpaid and charged on said land; and my son Henry Singer, his heirs and assigns, are to pay the interest thereof, from the time said payments become due, unto my said daughter Catharine, yearly, during her natural life,' as in and by said recited will, since his decease duly proven and remaining in the register's office at Reading, in and for the county of Berks, recourse thereunto had appears. And whereas the said Henry Singer, son of the said Henry, became in his lifetime lawfully seised in his demesne as of fee, of and in a certain messuage tenement and two tracts of land, situate in Alsace township, Berks county, containing together one hundred and fifty acres, being the same which the said Henry Singer, by the above recited will, did give and devise unto his son Henry, with the appurtenances, and being so thereof seised, died intestate, and without issue, but leaving a widow, now intermarried with Henry Seiler, and brothers and sisters, to wit: John Singer, William Singer, Eve Singer, and the said Catharine, intermarried with Hugh Heffernan, to whom, by the laws of Pennsylvania relating to intestate estates, did descend and come. And whereas the said real estate of the said intestate was valued and appraised by an order of the orphans' court of the county aforesaid, and adjudged by the orphans' court to the said John Singer, one of the heirs at law, as in and by the records of the said court had, more at large, will appear. And whereas the said Hugh Heffernan and Catharine his wife, late Catharine Singer, by their attorney, Hugh Henry Heffernan, by letter of attorney under their hands and seals, bearing date the tenth day of June, in the year of our Lord one thousand eight hundred and fourteen, did nominate, constitute, and appoint the said Hugh Henry Heffernan, for and in consideration of the sum of two hundred dollars in specie, to me in hand paid by John Singer, of the borough of Reading, county of Berks aforesaid, yeoman, at and before the ensealing and delivering hereof, the receipt whereof is hereby acknowledged, and thereof acquit and forever discharge the said John Singer, his heirs, executors, and administrators, by these presents hath granted, bargained and sold, aliened, enfeoffed, released, and confirmed, and by these presents doth grant, bargain, sell, alien, enfeoff, release, and confirm, unto the said John Singer, and to his heirs and assigns, all

[Addams v. Heffernan.]

such sum or sums of money due or hereafter becoming due unto the said Hugh Heffernan and Catharine his wife, out of the estate of the said Henry Singer, the elder, agreeable to the above recited will; and also such sum or sums of moneys which are due, or hereafter becoming due, out of the estate of Henry Singer the younger, deceased, arising and issuing out of and from the said messuage, tenement, and two tracts of land, situate in Alsace township aforesaid. And further, I do by these presents acquit, release, and forever discharge the said John Singer, his heirs, executors, administrators, and every of them, of and from the payment of all such sum or sums of money, legacies, or bequest, now due or hereafter becoming due, unto Hugh Heffernan and Catharine his wife, arising out of the estate of the said Henry Singer, agreeably to his said will. And also all such sum or sums of money due and hereafter becoming due unto the said Hugh Heffernan and Catharine his wife, out of the real estate or personal estates situated in Alsace township aforesaid, whereof the said Henry Singer, the younger, died intestate; and also, of and from all actions, suits, accounts, costs and charges, payments, dues, demands, damages, trouble, and expenses whatsoever, touching or concerning the premises aforesaid. In witness whereof, I have hereunto set my hand and seal, this seventh day of July, in the year of our Lord one thousand eight hundred and fourteen.

"HGUH H. HEFFERMAN, [L. S.]

"Sealed and delivered in the presence of us,
"ICHABOD HAMLIN,<br>" HENRY BETZ."

A bond, dated the 9th day of November 1810, given by John Singer, and Peter Filbert and John Goodhart as his sureties, to Hugh Heffernan, intermarried with Catharine Singer, a sister of Henry Singer the younger, deceased (reciting the proceedings of the orphans' court on the real estate of said deceased), in the penal sum of 720 pounds, conditioned to pay Hugh Heffernan 180 pounds in one year, and 180 pounds after the death of the widow of said deceased.

Receipt on bond. "Received, July 7, 1814, from the within named John Singer, the sum of three hundred and sixty pounds, the amount within in full.       HUGH H. HEFFERNAN,
360*l.*                    *Attorney for Hugh Heffernan.*

Henry Betz testified as follows:

"I drew the release and witnessed it; the receipt on the bond is also in my handwriting. Mr Spayd was the attorney, and to the best of my recollection, the money was paid in his office. Hugh Henry Heffernan must have had the bond; he was alleged to be a son." Cross examined—"This receipt is in my handwriting; I am a witness to it. Mr Hineman was clerk of the orphans' court at that time."

Receipt on bond read.

February 9, 1836, letters of administration on the estate of Catharine Heffernan granted to John Heffernan.

October 11, 1838, letters of administration on the estate of Catharine Heffernan granted to George Heffernan. Defendant closed.

Plaintiff gave in evidence the following receipt:

" Received, Reading, July 7, 1814, from John M. Hyneman, Esq., a bond from John Singer and others to Hugh Heffernan, for his wife's share of Henry Singer's real estate, dated November 9, 1810.

" HUGH H. HEFFERNAN,
" *Attorney by letter of attorney for Hugh Heffernan, &c.*

" Witness, HENRY BETZ."

Administration account of Magdalena Singer and John Singer, administrators of Henry Singer, deceased, confirmed *nisi*, January 6, 1809; balance due estate, 395 pounds 9 shillings 5½ pence.

Charge of the court to the jury.

" The plaintiff claims the interest on 200 pounds, from the 12th of January 1814 to the 11th January 1836, under and by virtue of the will of Henry Singer, deceased; also, the sum of 180 pounds, with interest from the 10th of May 1834 to the 12th of January 1836, as one of the heirs of Henry Singer, senior, deceased.

" Henry Singer, the elder, by his will devised certain lands to his son Henry, he paying the sum of 1000 pounds to the testator's five sons and daughter Eve, in yearly payments of 100 pounds. The two last payments were to remain unpaid, and charged on the land, for and during the life of his daughter Catharine Heffernan, the interest thereof to be paid to her annually. It is admitted that the interest was paid to her up to the 12th of January 1814. Catharine Heffernan died on the 11th of January 1836, she having survived her husband.

Henry Singer, the devisee, died anterior to the year 1810, intestate, without issue, leaving a widow, who died on the 10th of May 1831. Henry left five brothers and sisters. In 1810 the land devised to Henry by his father was appraised, and accepted of by John, one of the brothers, at 1800 pounds; 900 pounds were paid by John to the other heirs, at the time of said acceptance; 900 pounds remained charged on the land, until the death of Henry's widow. The one fifth of this sum is the 180 pounds which is here claimed, with interest, since the widow's death.

" It is contended by the counsel of the defendant, that on the death of Henry, the devisee, the lands which had been devised to him by his father, descended to his brothers and sisters, of whom Catharine Heffernan was one, and therefore that this legacy was merged or extinguished.

" It is true, that on the death of Henry, this land did descend to his brothers and sisters, as tenants in common; notwithstanding

[Addams v. Heffernan.]

this fact, as against her brothers and sisters, Catharine still had a right to this interest, to be thus annually paid to her; the death of Henry did not destroy her right to it; at his death, Catharine did not become the entire owner of the whole estate. There never was a perfect union of the legal and equitable title in her. If she had become the entire owner of the land, then the charge in her favour would have sunk into the legal estate. In that case there could have been no just end for which the charge could have survived; she had not even the prior right of acceptance under our intestate laws. The brothers, by law, were preferred to her; of this advantage John availed himself, and thus the absolute estate became his. Why then should the charge be merged? She had not received the money, nor any equivalent for it; no rule of law enjoined her to relinquish it for the benefit of her brothers and sister; nor does it appear that in point of fact she did relinquish it. This is not insisted on, but the relinquishment is argued as being by operation of law. Justice would then appear to demand that the charge should still subsist. There is some legitimate and beneficial purpose which requires that it should be preserved. It appears to have been the understanding of the parties in interest that it should be preserved. The fact, that the interest was for some time confessedly paid by the occupant, is a strong demonstration of this understanding. It is even now contended that it has all been discharged. This is all inconsistent with the idea that it has been merged. It cannot be merged contrary to the intention of the parties. There is nothing in the whole transaction, either actual or presumed, which clearly manifests an intention that it should be merged. Whether it should merge or not, was not a matter of indifference to her; she might insist upon its payment as matter of right; that it should be kept alive appears to me best to subserve the purposes of justice, and the actual intention of parties, as far as that is demonstrated by what they did at the time. This purpose was one which was innocent, and worked injury to no one interested; to my mind it is most obvious, that her right to this money has not merged.

"John Singer, who accepted the land, having made his will, which was proved on the 29th of January 1822, died, but the precise time has not been shown; the same lands were devised by him to William Singer and Daniel Strœble. In 1822 Henry Seiler obtained a judgment against Daniel Strœble, and by virtue of execution process, his interest in the land, by the sale of which the money now in court for distribution was raised, was sold to John Addams. The sheriff's deed to him was acknowledged on the 15th of November 1828. On proceedings of partition of this land between Addams and Singer, it was valued at 3500 dollars. Singer accepted of the land; not having paid this appraised value, it was sold on a judgment obtained for the same, and the proceeds of this sale are now for distribution.

IX.—2 V

[Addams v. Heffernan.]

"The defendant has given in evidence a sheriff's deed to Mr Dotterer for the fifty acres of woodland which was part of the devised property; this was sold for 150 dollars; this sale must have taken place about January 1828.

"It is contended that this sale discharges the plaintiff's claim from that proportion of the debt which these fifty acres ought in equity to bear. We have not the facts in regard to the sale to Dotterer very fully before us. There is no doubt but both pieces of land were originally bound for these claims; when part was sold, and the money not applied to their payment, the first purchaser might insist that the money should be raised out of the lands unsold. Dotterer was the first purchaser, if I got the dates correctly; the debt should in equity be raised out of the residue of the land, and that sold could only be resorted to for that which remained after this residue was exhausted. So far as the facts are before the court, I do not see any thing which could relieve the fund for distribution, by throwing any part of the plaintiff's claim on the fifty acres.

"The execution of the power under the letter of attorney was not legal, and in itself does not bar the plaintiff's right to recover, even if the whole amount was paid to the attorney. The law has been so ruled in this very case by the supreme court. This law must be our guide. The question then is, whether any thing has been done by the principals which will amount to a ratification of what was done by the attorney. The attorney was the son of his principals; from the proof, that on his return home he informed them truly of what he had done, and paid them over the money which he had received as the consideration for this receipt and release. If he did, and they received the money, it would be a ratification of what he had done, and they would be bound by it, and could not recover in this action. If he informed them of what he had done, and they agreed to it, or acquiesced in it, they ought not now to be permitted, after this lapse of time, and under the circumstances of this case, to recover. The decision of these facts is left to you. If you find for the plaintiff, you will calculate interest on the annual instalments, from the time at which they were respectively payable.

"When John accepted of the lands, he gave a bond to Heffernan, in right of Catharine his wife, for her share. It is contended that this made the debt absolutely the property of the husband, and that the plaintiff cannot recover. When Heffernan the husband died, does not appear; but it has been conceded that he died before Catharine his wife. He never had reduced the money to possession. He had made claim, to be sure, but had never even obtained judgment for it. She was the meritorious person; the debt was due and owing in her right; on his death it survived on the wife. The action is properly brought in the name of the representative; nor do I think that the suit being stated in the name of George W. Heffernan, who, it appears, was appointed administrator long after

[Addams v. Heffernan.]

this suit was brought, interposes any difficulty under the circumstances of the case.

"I do not think that the sale by the sheriff to Mr Addams extinguishes the plaintiff's claims as a lien on the land, so sold, either in whole or in part.

"To this charge the defendant's counsel except, and at their request it is written and filed.  JOHN BANKS, [L. S.]"

Errors assigned.

1. The court erred in instructing the jury that when the lands, on which the said annual interest of 12 pounds was charged, descended to the said Catharine Heffernan and her brothers as tenants in common; the legacy previously charged upon said land in her favour, was not merged or extinguished, or any part thereof.

2. The court erred in charging the jury that the sale of the fifty acres of land by the sheriff to Mr Dotterer, did not discharge the claim of the plaintiff for that proportion of the debt which these fifty acres ought in equity to bear.

3. The court erred in charging the jury that the sale by the sheriff to Mr Addams did not extinguish the plaintiff's claim as a lien on the land so sold, either in whole or in part.

4. The court erred in charging the jury that the bond given to Hugh Heffernan for 360 pounds, in right of his wife, did not become absolutely the property of the husband, that it survived to the wife, and that her representative is entitled to the amount of said bond.

5. The court erred in charging that the suit is properly brought in the name of George W. Heffernan, administrator of Catharine Heffernan, deceased, although it appears that the said George W. Heffernan was not appointed the administrator of said Catharine Heffernan until long after this suit was brought.

6. The court erred in charging the jury that the execution of the power was not legal in itself, and does not bar the plaintiff's right to recover, even if the whole amount was paid to the attorney.

7. The court erred in charging the jury that payment of the whole of the annual interest of 12 pounds should be made out of the money raised by the sale of the one hundred acre tract.

8. The court erred in charging the jury to calculate interest on the annual instalments from the time they became due.

*Deckert* and *Smith*, for plaintiff in error, on the argument of the first error assigned, cited 2 *P. Wms.* 604; 7 *Watts* 20; 2 *Penn. Rep.* 340; 5 *Whart.* 452. Third error, 16 *Serg. & Rawle* 410; 1 *Penn. Rep.* 96; 4 *Rawle* 440; 3 *Rawle* 109; 2 *Penn. Rep.* 477; 1 *Penn. Rep.* 120. Fourth error, 12 *Pick.* 173; 5 *Johns. Chan.* 196; 2 *Kent's Com.* 115; 2 *Penn. Prac.* 109.

*Hoffman* and *Greenough*, for defendant in error. First error, 18 *Vez.* 384; 5 *Watts* 456; 4 *Whart.* 410; 8 *Watts* 138. Second

error, 1 *Rawle* 295; 1 *Watts* 494.   Eighth error, 4 *Watts* 177; 2 *Watts* 200; 4 *Dessaus.* 422.

The opinion of the court was delivered by

KENNEDY, J.—The defendants below, who are the plaintiffs in error, resisted the claim of the plaintiff below, for the arrears of the annuity of twelve pounds, charged upon the one hundred and fifty acres of land, devised to Henry Singer, Jr., by the last will of his father, Henry Singer, the elder, on the ground that the annuity became extinct, either in whole or in part, by means of the one undivided fifth of the land's having descended to Catharine Heffernan, the annuitant and intestate of the plaintiff below, as one of the five heirs at law of the devisee of the land, who died intestate, as it appears from the petition of John Singer to the orphans' court, on the first of July, 1807.   The court below, however, were of opinion that the circumstance of the annuitant's having become by descent the owner of an undivided fifth part of the land, as tenant in common, did not affect her right to have the full amount of the annuity thereafter paid to her, in any degree whatever, and accordingly instructed the jury to that effect.   To this instruction the counsel for the defendants below took exception, and have assigned it here as the first error.   In the first place it may be proper to observe, that the claim to the annuity is not made against the estate of Henry Singer, the devisee, generally, as if he had been personally liable originally for the payment of it, but against the fund arising from the sale of the land, or rather one hundred acres thereof, whereon it was charged and made a lien by the will of the testator, who gave it.   For supposing the annuitant to have been entitled to claim the whole of the annuity against the devisee personally in his lifetime, or his personal representatives after his death, yet it may present a different question, whether she, having become the owner of an undivided portion of the land, upon which the annuity was charged, could do so as against it thereafter.   Now it is very clear, that, if she had become the owner of the whole of the land so charged, the annuity would have become entirely extinct thereby.   Notwithstanding, however, the court below considered this would have been the result of such an event, yet they entertained the opinion, that a partial ownership of the land by the annuitant would not operate as an extinguishment even *pro tanto*.   Under the statute regulating the descent of estates of inheritance in Pennsylvania, no distinction is or can be made as to the quantum that each of the heirs standing in equal degree to the ancestor shall take, where every thing like advancement to any of them by the ancestor in his lifetime is out of the question.   Their interests are made equal by the statute; but in the case before us, if it were to be adjudged that the annuitant took her undivided fifth part discharged of the annuity altogether, and that the other heirs took their respective portions of the estate, charged exclusively with the whole of it, the consequence is,

that the annuitant would be held to have acquired by descent a greater interest in the estate than either one of the other heirs. Or suppose that the interest of one of the other heirs in the land charged had been sold under a judgment and execution against him in the lifetime of the annuitant, when arrears of the annuity were due to her, and she had claimed and been paid the amount of such arrears out of the money arising from the sale, would it not have been just as equitable that the heir, whose portion of the land charged had thus been sold and made to pay the whole amount of the arrears due to the annuitant, should have had contribution from the other heirs? It would seem as if but one answer could be given to this question, and that a stronger case for making equality of burthen the rule of equity, as also that of decision in the case, could not be easily imagined, and is never likely to happen. Again, suppose another person, instead of the annuitant, had in such case been the owner, by descent of her fifth of the land charged, could it be doubted for a moment that such person would not have been liable to contribution? Certainly not. Then why should the annuitant be exempt from it—or, in other words, why should not one-fifth of the annuity be considered as extinguished, and thus equalize the interests respectively which the five heirs acquired by descent in the land. Though heirs will not be permitted to claim contribution against a purchaser from their ancestor, yet, as against each other, there is no reason why they should not have it. Boyer *v.* Rivettte, 3 *Bulstr.* 320, per Jones, J.; and 321, per Dodridge, J. The distinction in this respect is founded in reason, because the heirs succeed to the estate as the ancestor held it, and stand as it were in his place, bound to fulfil his obligations, so far as they were a charge upon the estate at the time of his death, or otherwise give it up for that purpose. Had the annuitant acquired her interest in the land, charged with the payment of her annuity, by purchase, it is not necessary to say here what would have been the effect of it, whether it would have operated so as to have extinguished the whole of the annuity or not. Supposing, however, that it would, still it does not necessarily follow that the acquisition of a similar interest by the *act of the law* would produce such an effect: because the maxim, *actus legis nulli facit injuriam,* may interpose to prevent it. As in the case of a rent charge, if the grantee purchase part of the land, the rent thereby becomes extinct, and he shall never have a writ of annuity; but if the rent charge be determined by the act of God, or of *the law,* the grantee may have a writ of annuity. *Co. Lit.* 148, *a.* So if the tenant of the land, in case of a rent charge, convey part thereof to the father of the party entitled to the rent, and the father dies, whereupon the land so conveyed *descends* to the owner of the rent, the rent shall not thereby become suspended or extinguished in whole, but in part only, and shall be apportioned. *Co. Lit.* 148, *b.* The result would doubtless be the same in the case of land charged with a rent seck, because the only distinction between a rent seck

IX.—2 v*

[Addams v. Heffernan.]

and a rent charge is, that the remedy by distress is granted with and accompanies the latter. The charge in question having been without the remedy by distress for its recovery, may therefore be very justly considered the same as a rent seck, or an annuity charged upon the land, and as falling under the same rules. We therefore think that the court below erred in not having instructed the jury to apportion it, if they found for the plaintiff, by reducing it from twelve pounds to nine pounds twelve shillings per annum.

The second error is, that the court erred in charging the jury, that the judicial sale made by the sheriff of the fifty acres to John Dotterer, for 150 dollars, did not discharge so much of the claim of the intestate of the plaintiff below, as the fifty acres ought in equity to bear; according to their proportional value to that of the whole one hundred and fifty acres. We are of opinion that this error cannot be sustained. The land upon which the claim of the intestate of the plaintiff below was a charge, consisted of two separate lots, one containing one hundred acres, and the other fifty acres: so that in this respect she may be considered as having two distinct funds, to which she had a right in law to resort, in order to have her claim satisfied. In such case, having a clear legal right to resort to either for payment, she of course had the right of forbearing to make her claim upon the first that was converted by a judicial sale into money. If any objection existed on the part of any one to her doing so at the time, he ought then to have made it known, and to have invoked the aid of equity to prevent her from doing so, if he had any sufficient ground for it. Her right to go against either fund, or any portion of the land charged, being a perfect legal right, could not be affected by a mere equitable objection, unless it were made in time to prevent her from losing by it. But the moneys arising from the previous sales having been all appropriated to the payment of other claims, cannot now be come at by the plaintiff below; and no notice having been given to him or his intestate that such a thing was desired, it is obviously too late to insist now upon having recourse thereto, or upon his losing any portion of his claim because he or his intestate did not do so. If we had a court of chancery, the right of the intestate of the plaintiff below at law, to resort to either fund, could have been resisted only in that court; but it is too plain to admit of illustration, that if such application were not made until after the plaintiff's intestate had permitted one of the funds, upon which she had a lien, to be appropriated to the discharge of junior claims, it would be too late then to make it, as no alternative remained.

The third error presents substantially the same question as the second, and therefore requires no further answer in order to show that it cannot be sustained.

The fourth error is also untenable. The claim of the plaintiff below, in right of his intestate, is not, properly speaking, founded upon the bond there alluded to: for if it had, it might be lost as to her estate upon another ground, very different from that of its hav-

[Addams v. Heffernan.]

ing been reduced into possession by her husband, as is contended it was, by his taking the bond payable to himself. The bond was no lien upon the land before the death of the obligor, and hence, for aught we know, if the claim of the plaintiff below rested upon it, the money arising from the sale of the land may be all required to satisfy prior liens. But the claim of the plaintiff below is not founded upon the bond. It is founded upon a recognizance, acknowledged by John Singer in the orphans' court, when the land was decreed to him, which bound it from its date. The condition of this recognizance is, that the money should be paid to the *heirs* severally of Henry Singer, the younger, in their respective proportions: so that the intestate of the plaintiff below being one of the heirs, and not her husband, the money claimed in this action was made payable to her, and she having survived her husband, was entitled to it at the time of her death, which gives the plaintiff below a right to claim it as her representative.

There is nothing in the fifth error; because the issue joined here being a feigned one, ordered by the court for the purpose of ascertaining matters of fact, they might nominate whom they pleased as parties for that purpose.

The question embraced in the sixth error was settled by this court in Heffernan *v.* Addams, 7 *Watts* 116, where it was determined that the letter of attorney mentioned in this error was not legally executed—in short, not executed at all.

The question raised by the seventh error is answered fully in the answer given to the first error.

We also think that the court were right in the instruction given to the jury, which is excepted to in the eighth and last error. Catharine Heffernan, the intestate of the plaintiff below, being a daughter of the testator, William Singer, the elder, it may therefore be reasonably supposed that he intended the twelve pounds *per annum* as a partial support for her at least, and for this purpose his desire was, that it should be punctually paid to her, that she might by means of it be made comfortable. For want of it, however, it may be, that debts were contracted upon which she had to pay interest. But besides, as it regarded her, the twelve pounds are not to be looked upon as the interest of money that was due or owing to her. It was itself *principal* to her, so far as she had a claim to it; and therefore ought to have been punctually paid. And had it been so, she would have had the use of it, which we must presume would have been equal in value to the interest; but having lost the use of it, by reason of the delinquency of the owners of the land, who were bound to have paid it regularly as it fell due, it is but reasonable that interest should be allowed as a compensation for the loss so occasioned.

The judgment is reversed on account of the first error assigned, and a *venire de novo* awarded.