## Snyder *versus* Crawford, et al.

1. A. was the owner of a tract of land which was subject to the lien of several judgments, one of which was held by B. Being desirous to sell the tract, he applied, through his counsel, to B. for a release. Said counsel stated to B. that he was informed and believed that the property would realize more than sufficient to pay off her judgment, and those prior thereto, and she, by his advice, accordingly executed an instrument by which she agreed that the land should be sold clear of her judgment, provided that the purchase money should be applied to the payment of said judgment, according to its priority of lien. A short time afterwards the land was sold and conveyed to C., but for a sum insufficient to pay any part of B.'s judgment, according to its priority. It did not distinctly appear whether, at the time of the sale, C. had any knowledge of the contents of B.'s instrument of release or not. A scire facias to revive her judgment having been subsequently issued by B. against A. and C. as terre-tenant: *Held*, that C. having purchased and paid the purchase money in good faith, his title could not be impaired by any verbal declarations made by A.'s counsel to B., without his authority or knowledge, and that therefore he took a title discharged from the lien of B.'s judgment.

2. Where properties subject to a common incumbrance are successively alienated, the holder of the incumbrance may, upon the sale of any one of them, release the same from the lien of the encumbrance, without thereby releasing those previously conveyed, even though he may have notice of such prior alienations, unless, indeed, he has received a distinct notice from the prior vendees, cautioning him against doing anything by which their rights may be diminished.

3. Taylor's Executors *v.* Maris, 5 Rawle 51; McIlvain *v.* Mutual Assurance Co., 12 Norris 30, and Wilbur's appeal, 10 W. N. C. 133, followed.

June 16th and 17th 1881. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Franklin county :* Of May Term 1881, No. 185.

Scire facias to revive judgment, brought by Margaret Snyder against John E. Crawford, administrator of Martin B. Wingert, deceased, with notice to Isaac Burkholder, Christian Wingert, Adam Small and Henry Small, terre-tenants.

The judgment sought to be revived was upon a judgment note for $3,000 given by Martin B. Wingert to his daughter, Margaret Snyder, the plaintiff, and entered in the Common Pleas of Franklin county, December 19th 1874. This scire facias issued December 13th 1879. The terre-tenants, Burkholder and Christian Wingert, pleaded payment, payment with leave, &c.

On the trial, before Rowe, P. J., the following facts appeared : When the plaintiff's judgment was entered, Martin B. Wingert

was the owner of three tracts of land in Franklin county. There were several judgments against him prior to that of the plaint'ff. By power of attorney, dated December 8th 1874, Martin B. Wingert appointed Martin Heintzelman and Frederick Byers his attorneys-in-fact, with authority to sell and convey his real estate, by virtue of which power the said attorneys-in-fact, on April 2d 1875, sold and conveyed one of the tracts to Isaac Burkholder for $10,700 in cash; this deed was recorded May 17th 1875; and on September 1st 1875, said attorneys-in-fact conveyed another of said tracts of land to Christian Wingert for $2,900, the bulk of which was paid in cash and the balance secured by judgment. This deed was not recorded. Neither of these deeds was made *expressly* subject to any liens of judgments existing against the grantor.

On September 28th 1875, said attorneys-in-fact, being about to sell the remaining tract to Adam and Henry Small, procured from the plaintiff, through their counsel Judge Kimmell, the following release from the lien of her judgment:—

"Margaret Snyder *v.* Martin B. Wingert, No. 35 February Term, 1875.

"I have a judgment in the Court of Common Pleas of Franklin county, against defendant, and I hereby agree that the agents shall sell the land clear of the lien of my judgment, provided that Heintzelman and Byers apply the money to the payment of my judgment according to its priority of lien. Witness my hand and seal, 28th September, A. D. 1875.

"Test: MARGARET SNYDER, [SEAL.]
    "F. M. KIMMELL."

On October 2d 1875, four days after this paper was executed, said attorneys-in-fact conveyed the remaining lands of Martin B. Wingert to Adam Small and Henry Small for $20,000, all of which was subsequently paid. The proceeds of this last sale proved insufficient to pay all the judgments against Wingert prior to that of the plaintiff, by reason whereof nothing was paid on the latter.

The plaintiff claimed that the above release was signed upon the faith of representations made to her by Judge Kimmell, counsel for said attorneys-in-fact, that the proceeds of the sale of the real estate would be sufficient to pay all liens upon the property, including her judgment, and would leave a surplus.

Judge Kimmell's testimony on this point was as follows:

"The sale of the land to the Smalls was spoken of to Mrs. Snyder.

"Q. Was this release prepared by you, and executed by her, with reference to the sale of the lands to the Smalls?

[Snyder *v.* Crawford.]

"A. Yes sir, for that was the last sale of the property.

"Q. Did you explain to her the effect of this release?

"A. Yes sir; . . . The impression left on my mind by Mr. Heintzelman was that the lands would more than pay the debts, and have money besides for the old man. Under this impression the whole thing proceeded from first to last. This lady spoke to me, and said she would not like to have anything done which would impair her rights; and I said I would do nothing that would impair her rights at all; that this was intended to operate so as to give the Smalls a title divested of the liens : and I added at the time that I thought it would not only pay the liens, but have something over and above for the old man. I said that to her.

"Q. That the effect of her signing it would be to release the lien of her judgment from that property?

"A. Yes; and from what I learned from the agents, it would pay the judgments, and leave a surplus for the old gentleman in his life-time. I remember that very distinctly, because she demurred at first about it; and as I had been a particular friend of Snyder's, I did not mean to do anything wrong to his wife under any circumstances.

"Q. Did you tell her it was necessary for her to sign, in order that the agents could give a clear title?

"A. Yes, that it was intended to enable the agents to give a clear title.

"Q. And you said she said she did not want to do anything to impair her rights?

"A. She called my attention to that distinctly.

"Q. And you told her it would not do so, and that the money would be applied according to its priority, and there would be enough to have a surplus left?

"A. I told her would be applied according to the priority of the liens and judgments, and that she need have no fears about that; it would pay her judgment also, and I thought it would leave something for the old gentleman." .

There was no direct evidence to show that the Smalls knew of the release at the time they bought the land, but there was some testimony that it was spoken of in their presence. It appeared that they obtained from the attorneys-in-fact a personal covenant for a good and unincumbered title.

There was no evidence to show that the plaintiff had any actual notice or knowledge, at the time of giving the release, of the prior conveyances to Burkholder and Christian Wingert.

The plaintiff took the following positions: (1) That by reason of the misrepresentations made to her by Judge Kimmell, counsel for the attorneys-in-fact, at the time she signed

[Snyder v. Crawford.]

the release, as between her and the judgment debtor, it was void. (2) That in the absence of evidence that the Smalls knew of the release, and acted upon the faith of its integrity, she was not estopped by it. (3) That she was not precluded from asserting her judgment against Isaac Burkholder and Christian Wingert, the first purchasers of the land, in the absence of proof that she had knowledge of the sales to them at the time she signed the release.

The plaintiff presented a number of points substantially to to the above effect, all of which were refused by the court, who charged the jury, inter alia, as follows:

"This release must be construed in the light of the evidence. Mrs. Snyder says that it was in view of the sale of the mansion farm to the Smalls that this release was executed; that it was a release of the land about to be sold to the Smalls only, and it was upon condition that the lien of Mrs. Snyder's judgment should be paid according to its priority upon the record. But the record shows that her judgment could not be reached by any appropriation of the moneys derived from the Small lands; so that if the application by the attorneys-in-fact was not according to priority of liens, still she was not injured thereby. The Small land sold for $20,000, and the judgments prior to hers amounted to $42,000. If she signed the release under the circumstances testified to by Judge Kimmell, the Smalls would not be affected by anything said or done by Judge Kimmell, who was not their agent, but the agent of Heintzleman and Byers. No fraud, no mistake, or misleading can be attributed to the Smalls. Under these circumstances, if she signed the paper, which is not disputed, the Smalls were released.

"Then, if the Smalls were released, the prior purchasers, Burkholder and Christian Wingert, must necessarily be released, because they had an equity or a right in equity to demand that the last purchased lands should be first applied to the liens; and if the judgment creditor released the last purchased lands, she also released these parties, too.

"[In the view of the law which we have given in the general charge and answers to the points there is really nothing in dispute as to the facts. You will have no difficulty in finding a verdict for the defendants.]"

Verdict accordingly for the defendants, and judgment thereon. The plaintiff took this writ of error, assigning for error the refusal of her points and the portion of the charge enclosed in brackets.

*J. McD. Sharpe*, for the plaintiff in error.—The court in withdrawing the case from the jury and directing a verdict for

2 OUTERBRIDGE—27

[Snyder *v.* Crawford.]

the defendants, virtually ruled, as matter of law, (1) that Mrs. Snyder was estopped by the release, although it was obtained from her by mistake of fact which amounted to fraudulent misrepresentation; (2) that she was estopped by it, notwithstanding the fact (which we must assume as found), that the Smalls had no knowledge of the release and did not purchase on the faith of it, but relied upon the collateral covenant of their grantors for a good and unincumbered title; (3) that the release of the tract last conveyed released by operation of law the two tracts previously successively conveyed, notwithstanding the fact that Mrs. Snyder had *no knowledge* of such previous conveyances.

We submit there was error in each of these rulings. If the release was obtained by misrepresentation of the judgment debtor or his agent or attorney, it was voidable as to him and as against every one who would not be defrauded by such avoidance. The Smalls, not having purchased on the faith of the release, were not in a position to assert that the plaintiff should be estopped by it. One who has been defrauded, may always show the fraud, provided, in doing so, he shall not harm one as innocent as himself.

We do not dispute the general rule that if several parcels of land, bound·by a common incumbrance, are aliened successively, they are liable in the inverse order of alienation, and that, if the incumbrancer, release the parcel lastly conveyed, *having notice of the prior conveyances*, the parcels previously conveyed are also released. But it is an essential element of such release by operation of law that the releasor should have had *actual notice or knowledge* of the prior conveyances. In the absence of such knowledge the release of the premises last conveyed does not estop the incumbrancer from enforcing his lien against those previously conveyed. The mere fact that the prior deeds were recorded is not sufficient to affect the incumbrancer with notice, as he is under no duty to search the record for them, as a purchaser is bound to do.

But in this case the deed to Burkholder for one of the tracts was alone recorded; that to Wingert of the other tract was never recorded. Yet the court held that both tracts were released by operation of law. The following cases either show directly that notice is necessary to an incumbrancer, about to release, of the existence of a prior conveyance, or they are tacitly consistent with such doctrine: McIlvain *v.* Mutual Insurance Company, 8 W. N. C. 260; Martin's Appeal, 1 Out. 85; Wilbur's Appeal, 10 W. N. C. 133; Taylor's ex'rs *v.* Maris, 5 Rawle 51; Nailer *v.* Stanley, 10 S. & R. 450; Cowden's Estate, 1 Barr 268; Mcvey's Appeal, 4 Barr 80; Paxton *v.* Harrier, 1 Jones 312;

[Snyder *v*. Crawford.]

Lowry *v*. McKinney, 18 P. F. Smith 294; Clowes *v*. Dickenson, 5 John. Ch. Rep. 235; Sanford *v*. Hill, 46 Conn. 42; Dewey *v*. Ingersoll, 42 Mich. 7.

*John Stewart* (*Kennedy* with him), for Adam and Henry Small, terre-tenants.—It is not alleged that there was any actual fraud or misrepresentation practiced on Mrs. Snyder in procuring the release; at most there was but an honest mistake on the part of Judge Kimmell, the attorney of the vendors. The Smalls had no part in deceiving her by such mistake. As a judgment creditor of Martin B. Wingert, Mrs. Snyder was bound to know what judgments stood upon the record against him prior to hers. If she relied on the statement of Judge Kimmell, as to the amount of such judgments, she cannot visit the consequences of this mistake upon the Smalls. The presumption is that the latter purchased on the faith of the release, and there was some evidence to sustain it. But whether they did or did not is immaterial: Cover *v*. Black, 1 Barr 493. The release was executed immediately before their purchase, and being in the direct line of their title, legally inured to their benefit. The fact that they exacted an additional warranty of title from the attorneys-in-fact of their grantor does not affect their right to rely upon the release.

*O. C. Bowers*, for Isaac Burkholder and Christian Wingert, terre-tenants.—Assuming that the release was valid to discharge from the lien of the plaintiff's judgment the land conveyed to the Smalls, we think it is settled law that the tracts previously conveyed to Burkholder and Christian Wingert were released by operation of law. We submit that the cases cited by the counsel for the plaintiff in error fully sustain this position, and that they fail to support the modification of the principle, which he contends for, that actual notice to the releasor of the prior conveyances is essential in order to estop the releasor from pursuing his lien against the lots previously conveyed. Wilbur's Appeal, 10 W. N. C. 133, is not applicable, as there the prior deeds were made *expressly* subject to the lien. No one of the other cases cited makes any such distinction as is claimed, and in Holt *v*. Bodey, 6 Harris 207, the question was in substance raised and determined the other way. In this case the plaintiff had notice from the record of the sale to Burkholder, and the release was executed within a month after the sale to Christian Wingert, who had six months within which to record his deed. In such case a party releasing is bound to search the record or make inquiry: Patty *v*. Pease, 8 Paige Chan. 277; Guion *v*. Knapp, 6 Ibid. 35. It cannot be that a purchaser of part of

land bound by a judgment must at once, in spite of all obstacles, give *actual* notice to all the lien creditors of his vendor not to release his remaining lands. The case is different from that where a creditor having a lien on tract A. is required to notify another creditor having a lien on tracts A. and B. not to release tract B. If the release is valid as to Smalls' land, it must be valid as to Burkholder's and Wingert's lands; because the right ·of a prior purchaser to have the lands of a subsequent purchaser protect his, is an *absolute right inherent in the transaction*, and therefore the lien creditor *cannot* release the last land sold without thereby relieving also the first whether he has knowledge of the first sale or not: Paxton *v.* Harrier, 1 Jones 312.

Mr. Justice MERCUR delivered the opinion of the court October 3d 1881.

The plaintiff held a judgment against Martin B. Wingert, which was a lien on three tracts of land. On the 28th September 1875, she executed a writing whereby she agreed that the agents of the owner of the land should sell one of the tracts clear of the lien of her judgment, provided the money produced by the sale be applied to the payment of her judgment according to its priority of lien. On the 2d October following the tract was sold and conveyed to Adam Small and Henry Small, two of the defendants. On distribution of the proceeds according to priority of liens, the money did not reach the judgment of the plaintiff. Thereupon she afterwards issued this scire facias, with notice to all who had purchased lands originally bound by her judgment.

On the trial it appeared that prior to her execution of the writing, Wingert had sold and conveyed the two other tracts of land, one to Burkholder on the 2d April 1875, and the other to Christian Wingert on the 1st September 1875.

The assignments of error present two questions: one, whether the Smalls took the land conveyed to them discharged from the lien of the judgment; the other, whether the instrument she executed operated as a discharge of the lien on the lands previously conveyed by Wingert?

1. The plaintiff claims she executed the writing relying on representations made to her that her judgment would be paid in full out of the proceeds of the sale about to be made to the Smalls. The latter, however, made no such representations, nor did any person acting in their behalf. If she was misled by the counsel and opinion of her own friend and adviser, the defendants are not to be prejudiced thereby. The payment of the judgment was not a condition precedent to the sale or to divesting the lien. The application of the money was intended to be

[Snyder *v.* Crawford.]

made after the lien was divested. She authorized the sale to be made so as to discharge her lien. The authority to the attorneys to sell existed. The Smalls having purchased and paid the purchase money in good faith their title cannot be impaired by verbal declarations made to her without their authority or knowledge. Nor does it matter whether they had knowledge of the contents of the paper. The vendors having full power to sell, the purchasers took the title discharged from the lien. The first three assignments are not sustained.

2. The writing clearly indicates an intention to discharge from the lien those lands only thereafter to be conveyed. She expected the judgment to be paid out of the proceeds; but she did not intend to release, nor did the writing profess to release, any other lien or security she held. She had no knowledge of the previous conveyances. She was under no obligation to examine or inquire if such had been made. It is claimed that inasmuch as the deed to Burkholder had been recorded on the 17th May 1875, she had constructive notice of the conveyance. Undoubtedly that would have been notice to one about to take a conveyance from Wingert, that he had previously conveyed: but it is not such notice as to prevent her from releasing the lien on some of the lands, and keeping it good on other lands bound thereby. If the vendees under prior conveyances desired to prevent her from releasing the lien of her judgment on other lands of the defendant, they should have distinctly notified her, before her release, of their purchases, and cautioned her against doing any act by which their rights might be diminished. Nothing less than this would prevent her from releasing the lien on a part of the lands, and holding it good on others. Taylor's Executors *v.* Maris, 5 Rawle 51; McIlvain *v.* Mutual Assurance Company, 8 W. N. C. 260; Wilbur's Appeal, 10 Id. 133. Even in case of a judicial sale, when a creditor having a lien on two funds, suffers the proceeds of one to be applied to junior incumbrances, he is not thereby estopped from claiming out of the other fund when converted into money: Addams *v.* Heffernan, 9 Watts 529.

The right to prevent a judgment creditor from releasing a part of his security must be invoked before the release is executed, and before the rights of others have been affected thereby.

The view we take of this case in no manner conflicts with the rule applicable in case of a judgment against principal and surety, and the creditor releases the land of the principal and seeks to hold the surety; nor with the right of one who has purchased a part of the lands bound by a judgment to compel a sale of the defendant's remaining lands before his shall be sold by

execution.   He cannot, however, remain inactive until after his land is sold and the purchaser has obtained a deed therefor, and then affect the title of the purchaser.   The doctrine of subrogation is not applicable to the present case.   The remaining assignments are therefore sustained.

> Judgment reversed and a venire facias de novo awarded.