## Winton, President, &c., *versus* Little.

1 Mere forbearance, however prejudicial to a surety, will not discharge him. The failure of a creditor to revive a judgment does not discharge a surety unless there was an express agreement at the time of giving the judgment that it should be kept revived for the benefit of the surety. United States *v.* Simpson, 3 P. & W. 437, followed.

2. Real estate security taken by a national bank for present or future advances is valid. Union National Bank of St. Louis *v.* Matthews, 8 Otto 264, followed, under the authority of which all the decisions of this court, in conflict therewith, are overruled.

3. In 1872, a bank made a loan and received therefor a note and confession of judgment signed also by sureties. The note was taken by W., the

[Winton v. Little.]

president of the bank, and was made payable to "W., president or bearer."
In order that the principal debtor might sell a portion of the lands in 1874,
W. gave a release of liens signed "W., president." . In 1876, the note not
being paid, execution was issued against the sureties. At their instance, the
execution was enjoined and an issue framed between "W., president of the
bank," and the sureties. This issue was tried in 1879. W. had negotiated the
loan, and done all the business respecting it, and the judgment stood in his
name: *Held*, that the long acquiescence of the bank in the acts of W. was
a ratification of them, and it was bound by the release given by him.

4. Depositions were taken in obedience to a rule of court in the presence
of the parties, and the witnesses were cross-examined. The justice of the
peace certified "that the above witnesses were duly qualified and examined
at the time and place stated in the caption before me." It was objected that
they were not admissible, on the ground that the certificate was improper, in-
asmuch as it did not recite that they were reduced to writing, nor that they
were subscribed in the presence of the justice by the parties : *Held*, that it
is to be presumed that the depositions were properly reduced to writing and
subscribed by the witnesses, until the contrary was shown, and it was not
error to admit them : *Held, further*, that not having made objection to the
absence of the signature in the court below, no claim, by reason of such
defect, could be made in this court.

March 18th 1880.　Before SHARSWOOD, C. J., MERCUR, GOR-
DON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Susquehanna county :*
Of July Term 1879, No. 118½.

This was an issue framed upon a judgment which had been
opened, wherein J. S. Little and H. P. Little, executors of Mary
Little, were plaintiffs, and W. W. Winton, president of the Second
National Bank of Scranton, defendant.

At the trial, before Waller, P. J., it appeared that on the
2d of December 1872, J. S. Little being indebted to the Sec-
ond National Bank of Scranton in the sum of $2955.17, ap-
plied to W. W. Winton, president, at the bank, for a loan of
$4000, to pay this and other indebtedness. The president agreed
to loan the amount for one year at 10 per cent. interest, if Lit-
tle would get his brother, H. P. Little, and his mother, Mary
Little, to sign a judgment note for the amount. The same day
the note in question was signed by these parties for $4400, at one
year, the interest being included in the note. When the note was
received at the bank, on the 3d, the amount of $4000 was passed
to the credit of J. S. Little. Judgment was entered on this note
December 4th 1872, in Susquehanna county, where H. P. Little
and Mary Little resided, and an exemplification of the record filed
in Wyoming county, where J. S. Little resided ; the lands which
the judgment bound being situated in those counties.

The note not being paid at maturity, a writ of fieri facias was
issued March 3d 1876, and levied on the lands, whereupon H. P.
Little and Mary Little made affidavit that they were sureties for
J. S. Little, and that plaintiff had released land from the lien of
the judgment without their consent, of sufficient value to pay the
judgment. The sheriff was thereupon enjoined from selling; and
13 NORRIS—5

[*Winton v. Little.*]

a rule to open the judgment granted November 21st 1876. An additional affidavit was filed by leave of court, which set forth that there was some $800 in the hands of the assignee in bankruptcy of J. S. Little, which should be applied in payment of this judgment; that Little had other real estate of the value of $3000; that he had paid $640 on the judgment for which no credit had been given, and that he had, without the knowledge or consent of the defendants in the judgment, made an agreement with the principal debtor, upon consideration, to extend the time of payment for one year.

In January 1877, the rule to open the judgment was made absolute, and on November 17th 1877, the death of Mary Little was suggested, and H. P. Little, her executor, substituted.

On April 27th 1878, a new affidavit was filed, setting forth that defendant had permitted the lien of the judgment to expire against land of J. S. Little, and that the United States District Court had authorized the sale of J. S. Little's property, discharged of the lien of this judgment, but bound by the lien of other and subsequent judgments, and leave was granted to enlarge the issue made by the other affidavits, if the court, on the trial, should be of opinion that the facts set forth constituted a defence.

The issue came on for trial at April Term 1879, when the filing of this supplemental affidavit enlarging the issue was objected to, on the grounds: 1. That the facts set forth constituted no defence to the action. 2. That a new cause of action could not be set up after the death of one of the parties, which had changed the rules of evidence and would jeopardize the rights of plaintiffs.

The objections were overruled. (First assignment of error.)

The plaintiffs proposed to prove that an arrangement was made between Mr. Winton, acting for the bank, and Mr. J. S. Little, to release certain real estate owned by the latter from the lien of the judgment, and that in pursuance of that arrangement a written release was secured of certain property, and was filed and is of record in this case.

They also stated that they did not propose to show that the directors passed a written resolution authorizing this release, but that upon the faith of the release a portion of the property was sold, and that it was procured for the purpose of enabling said Little to sell, and that he did sell and used this release for the purpose of showing that there was no judgment upon the property; that it was put upon the records of this court and stood there for five years; that no act was done in any manner by the directors affecting or repudiating it.

The release was signed "W. W. Winton, president." There was nothing in the offer to show that the bank or any of its officers knew of the release, nor was there any note of it made on the judgment docket.

[Winton v. Little.]

Objected to; especially that it does not purport to be a release by the Second National Bank of Scranton; that it purports to be a sealed release and is not sealed by the corporation; that there is no authority shown, or proposed to be shown, from the directors to W. W. Winton to sign or seal this paper release, or any other release; or to give any release to J. S. Little releasing the lien of the judgment. Objections overruled. (Second assignment.)

The plaintiffs then proposed to read depositions of Mary Little and H. P. Little taken before a justice of the peace upon rule and notice during the lifetime of Mary Little. Objected to on the ground that there is no proper certificate; it does not recite that they were reduced to writing by the justice, nor that they were subscribed to in his presence by the parties. Objection overruled, because they were taken in the presence of both parties and have been on file. (Third assignment.)

The plaintiffs presented the following points, to which are appended the answers of the court:

1. If the jury believe that the judgment in this case was given to secure future advances to be made to the principal debtor, J. S. Little, by the Second National Bank of Scranton, the judgment was absolutely void, and the plaintiff therein cannot recover.

2. If the judgment in this case was given in part to secure future advances to be made to J. S. Little, and in part to secure the payment of a debt already due the bank by J. S. Little, the judgment is void as to the part given to secure such future advances, and as to that part the plaintiff therein cannot recover.

Ans. "You will perceive that this presents questions of fact which we have already submitted to you, and we have virtually answered these two points in our general charge. We now, however, affirm these propositions, with the qualification that it is for you to ascertain from the evidence whether these facts are established." (Ninth and tenth assignments.)

The following were among the points of defendant, with the answers of the court thereto:

5. That the sureties having shown no authority in W. W. Winton to execute the release of the lien of this judgment, the same is not valid and binding upon the plaintiff in the judgment and does not operate to release the sureties unless the act was ratified by the plaintiff subsequently.

Ans. "We decline this proposition, and leave it with such suggestions and instructions as we have already given you upon that point." (Eleventh assignment.)

6. That there can be no ratification of an act of an agent of which the principal has no knowledge, and the mere fact of filing a paper purporting to be a release in the Common Pleas docket of a county distant from the place of business of a bank, is no evidence of notice to the bank.

Ans. "This proposition we cannot affirm. The bank is the plaintiff in the judgment, and is bound to understand the situation of its own record and its own claims. It would be a natural presumption that bankers are pretty sharp ordinarily in attending to their business, and would hardly allow a record to stand with a release of land which would be subject to the lien of the judgment for a period of four or five years filed in the case in which they had their judgment. Besides that, we have the evidence of the fact that the release was executed at the bank by Mr. Winton, and was done in the same manner and between the same persons that the original loan was negotiated, and the note given was signed in the same manner and made payable to W. W. Winton, president, or 'pres't,' which signified president, and that the lease was filed as executed by the parties under these circumstances." (Twelfth assignment.)

8. That the release in evidence is not the release of the defendants in the issue, and they are not bound by it.

Ans. "We will have to decline that proposition. We have left it to you as a question of fact under the evidence whether it is the act of the defendants or ratified or approved by them." (Thirteenth assignment.)

9. That the failure of a creditor to revive a judgment does not discharge a surety unless there has been an express agreement at the time of signing the note or giving the judgment that the same should be kept revived for the benefit of such surety, and there is no evidence of such agreement on the part of the defendants in the issue with the sureties or either of them, and upon this point the verdict must be for the defendants in the issue.

Ans. "We decline that proposition, with the qualification that a creditor could not release property that was bound by the judgment without releasing the sureties. If he could not do it by a direct act, he certainly could not do it by so negligently looking after the security of the principal as to let his property slip out from the lien of the judgment and then look to the security for it." (Fourteenth assignment.)

11. That upon the whole evidence the defendants in this issue are entitled to recover the amount of the judgment, less the two payments of $400 each and the sum of $869.60 received from W. T. Moxley, assignee.

Ans. "We cannot, of course, affirm that proposition under the instructions which we have given in the general charge." (Fifteenth assignment.)

In the general charge, the court, inter alia, said: "But it is alleged that this judgment was given to a national bank for the security of money to be advanced. We propose to submit to you as a question of fact whether it was given as security for advances to be made. When, if you find that it was a national bank (and we

[Winton *v*. Little.]

shall have to take the party itself as it stands upon the record, and put itself into this court, claiming to be such), and if you further find that this judgment was given as security for money to be advanced or loaned in the future to J. S. Little, then the judgment would be void as against the sureties, and there would be no recovery in this case in favor of the plaintiff in the judgment. If, however, it was given part for debt accrued and due from Little to the bank, and in part for loans to be advanced to him afterwards, then you will ascertain how much was due from Little to the bank at the time the judgment-note was given, to wit: the 2d of December 1872, because that part which was actually due from Little to the bank at that time was a proper subject-matter to be secured by a mortgage or judgment-note, under the laws of the United States authorizing the organization and management of national banks, under the law which is particularly known as the National Bank Law. The law makes a difference between debts accrued and debts to be created, or loans to be effected afterwards. That distinction is attempted to be made here as between a mortgage and a judgment. A judgment, it is said, might have accrued and not been entered up. But we will leave to you as a question of fact, under all the evidence, whether it was in contemplation of the parties at the time to give that judgment for money already loaned and for money to be loaned, or for the security that the judgment would afford the bank by reason of the lien it would have upon the real estate. If that was the ground or basis of the contract, and the foundation of that transaction, then it was taking security upon real estate for loans to be made afterwards; that is, if you find the fact to be that Little did not owe them the actual amount of $4000; and the law does not permit the taking of security upon real estate by a national bank as regards advances to be made subsequently. If you arrive at the conclusion that this note was given in part for money due and in part for money to be loaned afterwards, it will be necessary for you to determine the amount that was actually due to the bank when that note was given, and take that part and compute the interest on it up to the time these various payments were made, deduct the payments from the amount of the principal with interest added, and ascertain whether there is any balance due, and if so, how much to the plaintiff in the judgment." * * * (Fourth and fifth assignments.)

"You have heard the evidence in regard to the release which has been referred to, and we propose to submit to you as a question of fact whether that release was executed properly. That is, whether it was made properly by W. W. Winton, as president of the bank, with the approval of or subsequent ratification by the bank itself." * * * (Sixth assignment.)

"You will consider them all, and ascertain whether there is in

[Winton *v.* Little.]

the evidence sufficient to warrant you in the conclusion that W. W. Winton acted as the president of that bank by the authority or approval or consent of the bank in that matter, and in connection with that you will take into consideration the fact that they had a judgment upon the records of this court, placed there by themselves, and they could be reasonably expected in law to know the condition of their own judgment as it showed upon the record." * * * (Seventh assignment.)

"If you find that this release was made by Winton with proper authority, or proper approval, then you will deduct from this judgment the value of so much land as was released, as established by the evidence." (Eighth assignment.)

"We have instructed you that you will ascertain whether the judgment was valid under the Act of Congress, and whether it was in whole or in part a security for loans to be effected thereafter; and to the extent that it was given for debts of J. S. Little to the bank, existing at the time, it was a good and valid judgment up to the time the release was executed; and at that time you will ascertain the value of the property released and deduct it from the amount of the judgment and interest up to that time, deducting the payments that are specified here—two $400 payments and one of $869.60—and so make your computation in regard to the amount." (Sixteenth assignment.)

Verdict for the plaintiffs in the issue; when Winton, the defendant in the issue, took this writ, and alleged that the court erred as set forth in the above assignments of error.

*W. H. & H. C. Jessup,* for plaintiff in error.—The sureties neither paid the debt, nor took any steps to quicken the creditor to collect it. So long as the surety remained quiet the creditor might rest, and no act of mere quiescence can ever affect his remedy against the surety: United States *v.* Simpson, 3 P. & W. 437; Mundorff *v.* Singer, 5 Watts 172; Schoonover *v.* Pierce, 7 W. N. C. 93.

The president of the bank exceeded his authority and his acts were void : Wharton on Agency, sects. 587, 595, 683 ; Patterson *v.* Moore, 10 Casey 505; Wilson *v.* Jennings, 3 Ohio 528; Moulton *v.* Bowker, 115 Mass. 36 ; Hoet *v.* Bacon, 25 Id. 36; Green's Brice's Ultra Vires, 427 n.

It is only when inquiry becomes a duty that a party is bound to inquire of the state of a record, and in such case only he is bound to know what the record discloses. In this case there was no obligation upon the plaintiff after it had entered its judgments properly in the proper court to make any inquiry whatever as to any unauthorized or unknown acts of its agents or others, and the docket was no notice of any such acts. A debtor is bound to seek out and pay his creditor, but when a judgment is entered on his

[Winton v. Little.]

note he may still pay his creditor wherever he finds him without regard to any number of assignments of the judgment duly filed on the record of which he has not received actual notice : Henry v. Brothers, 12 Wright 72 ; Bury v. Hartman, 4 S. & R. 178.

H. P. Little's deposition was not even signed by him. In such shape it certainly was not admissible.

A national bank may take real estate security for present or future advances. The case of the Union National Bank v. Matthews, 8 Otto 61, has overruled the cases of this court which sustain an opposite view.

*D. & H. M. Hannah* and *McCollum & Watson*, for defendants in error.—It is a well-settled rule of law that if a creditor, by any contract which can be enforced at law or in equity, gives time to his debtor, or by any arrangement ties up his hands so that he cannot immediately proceed against the principal the surety is discharged : Clippenger v. Creps, 2 Watts 45 ; Miller v. Stem, 2 Jones 383 ; Sawyer v. Hicks, 6 Watts 76 ; Henderson v. Ardery, 12 Casey 449 ; Boschert v. Brown, 22 P. F. Smith 372.

The bank is not a party of record to this cause. The control of a judgment is vested in the person who is shown by the record to be the owner of it. If Winton was their agent, it was negligence in the officers of the bank to permit the record to show a false ownership of the judgment. If Winton transcended his authority the bank should have promptly disowned his act, and by its acquiescence it made his act its own : Kelsey v. National Bank of Crawford Co., 19 P. F. Smith 426 : Bredin v. Dubarry, 14 S. & R. 30.

In Fowler v. Scully, 22 P. F. Smith 456, and in Wood v. Peoples' National Bank, 2 Norris 57, it was distinctly declared by this court that a national bank could not recover upon a judgment or mortgage given for money loaned at the time and on the faith of this kind of security. It is claimed that these cases have been overruled by the United States Supreme Court in the case of National Bank v. Matthews, *supra*. But that case differs materially from the cases above referred to, and from the case now before the court. In the Bank v. Matthews there was a note given in the usual way constituting a " personal security," and a trust-deed was made as a collateral security. The Act of Congress was not infringed by this arrangement, and the decision of the court was put upon this ground.

Mr. Justice TRUNKEY delivered the opinion of the court, May 3d 1880.

Whether error was committed in any ruling against the defendants is a question they have not brought here, and cannot now be considered.

It can scarcely be said that the court did not fairly and properly

treat the case as if it were conceded by the parties that the judgment was owned by the Second National Bank of Scranton, incorporated and doing business under the laws of the United States. If this was error, we fail to see any reason why the bank should complain. The judgment was confessed by virtue of a warrant of attorney on a note payable to " W. W. Winton, president, or bearer," and he stands as plaintiff with the words, " President of the Second National Bank of Scranton" appended to his name. If they mean nothing, he alone is the plaintiff in interest, and they may be treated as surplusage. Putting them on the record did not impose the burden of proving what they meant upon the defendants. In absence of evidence or concession of a corporation, the judgment was Winton's, and inquiry respecting his authority to release its lien on real estate, or of the right of a national bank to take a judgment to secure future advances, would be impertinent. A glance at the case as presented, shows that, in fact, it was tried on the theory that the note was given for money of the bank of which Winton was president, and, therefore, the assignments will be considered as if the bank has a right to be heard in their support, notwithstanding its point that there is no evidence of its incorporation.

This judgment was entered in favor of Winton on a note taken in his name in 1872. An execution was issued in 1876, and on defendant's application, the writ was stayed and judgment opened. The trial was in April 1879. During all that time the directors of the bank knew, or ought to have known, that the judgment appeared in favor of Winton, and not the bank, and no move was made to put it in the bank's name. In 1874 Winton gave a release of lien to enable the principal debtor to sell and convey a part of his land. Winton negotiated the loan and did all business respecting it. Why did the directors suffer the judgment to stand in his name, if they had not given him authority to take it ? If no such authority was given, what was the long acquiescence but a ratification ? Though the appended words be sufficient notice of the claim of the bank, it would be commonly understood that it was put in Winton's name for the very purpose that he could control it as his own. The bank had a legal existence, and was capable of acting, suing and receipting in its own name. If it chose to put the judgment in name of another, it ought to be bound by his acts with others in dealing with it. There was no conspiracy to defraud the bank between Winton and the purchaser of the land, and if by the agent's mistaken judgment any must suffer, the loss should fall on the one that gave him power to act. It may be true, as alleged, that the release does not purport to be the release of the bank ; but it purports to be the release of the party to whom the note was payable and who held the judgment. We are not convinced that error was committed in the rulings and instructions set

[Winton v. Little.]

forth in the second, sixth, seventh, eighth, eleventh, twelfth and thirteenth assignments.

The depositions of Mary Little and H. P. Little stood as if they had just been taken and offered in evidence, no notice having been given, as provided by the rule of court, of the filing.    When offered, the plaintiff objected "on the ground that there is no proper certificate; it does not recite that they were reduced to writing by the justice, nor that they were subscribed in his presence by the parties."    Here he is confined to the objection taken in the court below.    The depositions were taken in obedience to a rule of court, in presence of the parties, the witnesses cross-examined, and we do not think the certificate fatally defective.    In such case, it is presumed that the depositions were properly reduced to writing and subscribed by the witnesses in presence of the justice until the contrary is shown.    No objection was made that H. P. Little had not signed his deposition.    The third assignment is not sustained.

As a proposition the plaintiffs' ninth point should have been affirmed, unless refused on the ground that there was no evidence of the fact on which it was based.    The answer indicates that the fact was submitted.    Mere forbearance, however prejudicial to the surety, will not discharge him.    This rule applies where a creditor suffers a judgment to lose its lien for want of revival against the principal debtor, and thereby subsequent creditors are enabled to take the land: United States v. Simpson, 3 P. & W. 437.    The fourteenth assignment is well taken.

On the authority of the Union Nat. Bank of St. Louis v. Matthews, 8 Otto 621, the instructions complained of in the fourth, fifth, ninth, tenth and sixteenth assignments, were erroneous. That case has settled that real estate security taken by a national bank for present or future advances is valid, and all conflicting decisions in the state courts must give way.    It is there said, " Our attention has been called to but a single point which requires consideration, and that is whether the deed of trust can be enforced for the benefit of the bank."    After noting that the Supreme Court of. Missouri held the deed of trust to be the same thing as a mortgage, and that the loan was made on real estate security, it is held, " These things render it proper to consider the case in that aspect, and conceding them to be as claimed, the consequences insisted on by no means necessarily follow.    The statute does not declare such security void ; it is silent upon the subject.    If Congress so meant it would have been easy to say so, and it is hardly to be believed that this would not have been done instead of leaving the question to be settled by the uncertain result of litigation and judicial decision. * * *    The impending danger of a judgment of ouster and dissolution was, we think, the check, and none other, contemplated by Congress.    That has been always the punishment

[Winton *v.* Little.]

prescribed for the wanton violation of a charter, and it may be made to follow whenever the proper public authority shall see fit to invoke its application. A private person cannot, directly or indirectly usurp this function of the government." Justice Miller dissented, on the ground that the Act of Congress forbade national banks to take real estate security for money loaned at the time of the transaction, and that such security is void in the hands of the bank.

The point arises under a statute of the United States, and having been decided by the United States Supreme Court, the prior rulings of this court, so far as in conflict, fall.

Judgment reversed, and a *venire facias de novo* awarded.