[ PHILADELPHIA, FEBRUARY 24TH, 1840. ]

## JACK *against* JONES.

5wh321|
[163    217|

APPEAL.

In June, 1828, a judgment was obtained against J. S., who died in 1829, leaving real estate, which descended to his children. In 1832 a *scire facias* issued on this judgment, against the representatives of J. S., upon which judgment was obtained in March, 1833. Part of the debt was afterwards paid, and executions issued in 1833 and 1834 for the balance, but none of them were levied upon the land, the proceeds of which were in question. In 1831 a judgment was obtained against one of the children of J. S., which was duly revived in 1835, and an execution issued, under which all the right, title and interest of the defendant in certain land which descended to him from his father, were sold by the sheriff, and the proceeds were brought into Court for distribution. *Held*, that the plaintiff in this execution was entitled to the proceeds, in preference to the judgment creditor of the father, who had suffered the lien of his judgment to expire.

THIS was an appeal from a decree of the District Court for the City and County of Philadelphia, in the matter of the distribution of the proceeds of a sheriff's sale of certain real estate, sold by virtue of an execution upon a judgment obtained by Charles J. Jack, Esq., to the use of Charles Watres, against John C. Jones.

The fund in the Court below was two hundred and fifty-five dollars, and arose from the sale by the sheriff, under the above writ, of the following premises, to wit :—" All the right, title and interest of John C. Jones, of and in a three-story brick store, No. 127 North Water street."

The sale took place on the 2d of April, 1838, and was confirmed on the 6th of August, 1838. The money was paid into Court ;. and the question of distribution was referred to an auditor, who reported the following facts, viz. :

" Isaac Jones, father of the defendant, was seized in fee (*inter alia*) of the store and lot above described, and died (*quoad hoc*) intestate, on or about the 29th of December, 1829.* The defendant was one of his heirs at-law.

* See 3 *Wharton*, 178, (*Jones* v. *Hartley*.)

(Jack *v.* Jones.)

On the 2d of June, 1828, the Pennsylvania Fire Insurance Company entered judgment against Isaac Jones, on a bond with warrant of attorney, in the Supreme Court, for twenty thousand dollars, (real debt ten thousand dollars;) Isaac Jones being then alive. A *scire facias* issued on this judgment against his representatives to December Term, 1832, which was arbitrated, and an award for the plaintiffs for seven thousand three hundred and sixteen dollars and sixty-six cents, was filed on the 11th of March, 1833, which was never appealed from, and has never been since revived. Part of this sum was subsequently paid. Executions were issued on this judgment to June Term, 1833, December Term, 1833, and December Term, 1834, and subsequently. None of them however were levied upon this property.

The plaintiff obtained judgment in the District Court against the defendant on the 25th of February, 1831, for one hundred and fifty dollars.

On the 13th of May, 1835, the defendant, by deed duly acknowledged and recorded, conveyed all the estate which he inherited from his father, to F. Koons, A. Mathews and others. On the 30th of January, 1836, Koons and the other grantees reconveyed to the defendant one-fifth of what he had conveyed to them by the above deed ; and he again on the 15th of August, 1836, sold and transferred the said one-fifth to John Ambler. The plaintiff issued a *scire facias* on his judgment to September Term, 1835 ; to which the sheriff returned " *nihil ;*" and an *alias scire facias* to December Term, 1835, which was also returned " *nihil ;*" and on the 12th of December, 1835, judgment was rendered in his favour for one hundred and ninety-three dollars and fifteen cents. No notice was given in either of these cases to the terre-tenants of the premises in question. Executions were then regularly issued, under which, as beforesaid, the premises were sold. The antagonist claimants of the fund were, The Pennsylvania Fire Insurance Company, judgment creditors of Isaac Jones, the ancestor, and the plaintiff, the senior judgment creditor of John C. Jones, the heir."

The auditor, after deducting the expenses of the audit, awarded the balance of the fund in Court, $224 02 to the plaintiff on account of his judgment; on the ground that the Pennsylvania Insurance Co. could claim the money only as a judgment creditor; and, as such, the lien of their judgment expired on the 11th of March, 1838, (viz. five years from the 11th of March, 1833,) and the property in question was sold on the 2d of April, 1838; consequently, after and immediately upon the expiration of the said lien, the lien of the plaintiff's judgment (the eldest of record against the defendant,) obtained priority over that against the ancestor; the priority of which latter could only have been preserved by a second revival in

(Jack v. Jones.)

due season. The claim of the Insurance Company to a lien under the then intestate law of 1797 was disallowed, as having no reference to judgments against decedents in their lifetime; they being regulated by the act of 1798 and its supplements, according to the authorities.

To this report the counsel for the Pennsylvania Insurance Company filed exceptions; and the Court below, on the 15th of December, 1838, set aside the report, and ordered and decreed that the fund should be paid to the Pennsylvania Insurance Company on account of their judgment. From which decree Charles Watres appealed to this Court, and filed the following assignment of errors.

" 1. Because the Court below erred in reversing the report of the auditor, and decreeing the fund in Court to be paid to the Pennsylvania Fire Insurance Company on account of their judgment against the representatives of Isaac Jones, deceased, when they ought to have confirmed the said report, and ordered distribution to be made in conformity therewith.

2. Because no interest passed by the sale that could be bound by any incumbrances, except those against John C. Jones; the terretenants not having been made parties to the *scire facias* issued by the plaintiff, or in any way warned according to law.

3. Because the Pennsylvania Insurance Company, by not reviving their judgment in time, lost its priority, as against that of the plaintiff."

Mr. *J. A. Phillips* and Mr. *Budd*, for the appellant, referred to the acts of 4th April, 1797, and 4th April, 1798, and cited *Black* v. *Dobson*, (11 *Serg. & Rawle*, 94.) *Quigley* v. *Beatty*, (4 *Watts*, 13.) *Commonwealth* v. *Pool*, (6 *Watts*, 32.) *Hemphill* v. *Carpenter*, (Id. 22.) *Fryhoffer* v. *Busby*, (17 *Serg. & Rawle*, 121.) *Trevor* v. *Ellenberger*, (2 *Penn. Rep.* 94.) *Penn* v. *Hamilton*, (2 *Watts*, 93.) *Kerper* v. *Hock*, (1 *Watts*, 9.) *Bruch* v. *Lentz*, (2 *Rawle*, 419.) *Fetterman* v. *Murphey*, (4 *Watts*, 24.) *Duncan* v. *Clarke*, (7 *Watts*, 224.)

Mr. *Fallon*, contra, cited *Graff* v. *Smith*, (1 *Dallas*, 481.) *Luce* v. *Snively*, (4 *Watts*, 398.)

The opinion of the Court was delivered by

SERGEANT, J.—The act of 1798, requiring judgments to be revived within five years, in order to preserve their lien, was decided in *Fryhoffer* v. *Busby*, (17 *Serg. & Rawle*, 121,) to apply to all judgments, notwithstanding the death of the defendant within the five years; and it was held, that in such case the lien of the judgment against the intestate is lost, as against subsequent judgment creditors, whose liens are in full force, if not duly revived against the admin-

(Jack *v.* Jones.)

istrator. In *Fetterman* v. *Murphy*, (4 *Watts*, 424,) it was contended, that even as against the heir or devisee, the lien of a judgment against the testator was lost altogether, if the judgment was not duly revived. But the act of 1798, which alone regulates judgments against the decedent, was considered as having been passed for the protection of purchasers and judgment creditors, and not for the protection of heirs and devisees, who must stand exactly in the situation of the debtor; and therefore the land of the decedent was held liable, even after twelve years, to execution and sale on a judgment against the decedent not revived. In the present case the heir has incumbered the land by a judgment against himself, and the competition is between a creditor of the ancestor on a judgment against him not revived at the time of sale, and a creditor of the heir, having a judgment against him, which was then in full force. The act of 1798 extends to all judgments, though one be against the decedent, and another against the heir deriving title from him. Judgments bind the land, into whose hands soever it may come; and on a sale of it, it has been repeatedly held, that all judgments in force, whether against the present or prior owner, are to be paid out of the purchase-money, according to their priority. *Milliken* v. *Kendig*, (2 *P. R.* 497.)  *Commonwealth* v. *Alexander*, (14 *Serg. & Rawle*, 287.)  *Stiles* v. *Bradford*, (4 *Rawle*, 394.)  The object of the legislature was to limit judgments to five years, unless revived; and though a judgment, as to the heir himself, is indefinite, it is otherwise as to a judgment creditor of the heir, in the same manner as it would be if the case were that of the decedent himself. Otherwise judgment creditors would be defeated by stale liens, and indefinite incumbrances would clog the transfer of titles, as before the act of 1798. I have not referred to the intestate act of 1797, because it has no reference in its limitations to judgments against decedents in their lifetime; their lien is regulated by the act of 1798 and its supplements. *Trevor* v. *Ellenberger*, (2 *Penn. Rep.* 96.) *Kerper* v. *Hock*, (1 *Watts*, 9.)  *Penn* v. *Hamilton*, (2 *Watts*, 53.) I speak, moreover, of the state of the law prior to the late act of 24th February, 1834, which has made some alterations on the subject. The judgments in the present case were all prior to that act.

Judgment reversed, and report of auditor confirmed.