F. W. Searight's Estate.    Jos. A. Stuart's Appeal.

*Principal and surety—Failure to revive judgment.*

The failure of a judgment creditor to revive and continue the lien of a judgment against the real estate of a principal debtor, does not release the surety where the surety died within five years after the last revival.

*Constitution—Amendment of act—Acts of June* 1, 1887, *Feb.* 24, 1834.

The act of June 1, 1887, P. L. 289, amending the act of March 26, 1827, P. L. 129, by adding a clause preventing the continuance of a lien of a judgment as against a terre tenant whose deed is recorded, does not affect the act of Feb. 24, 1834, P. L. 77, continuing the lien of judgments against the lands of decedents. As the act of June 1, 1887, does not undertake to amend the act of Feb. 24, 1834, there was no need to repeat the terms of the latter act as required by article 3, § 6, of the constitution, relating to amendment of acts. The constitutional provision applies only to express amendments.

*Subrogation—Equity.*

The right to enforce subrogation depends upon the equity of each case. It may be enforced by the debtor or by the creditor, as the case may be; but it seems that in no case may the latter do what the former could not do with the right conceded to be in him.

Argued April 26, 1894.    Appeal, No. 502, Jan. T., 1894, by Joseph A. Stuart, a judgment creditor of F. W. Searight, deceased, from decree of O. C. Cumberland Co., dismissing exceptions to report of auditor.    Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Exceptions to report of Edw. B. Watts, Esq., auditor.

The following opinion was filed by STEWART, P. J., specially presiding:

" Subrogation was claimed for Joseph A. Stuart under the following circumstances : Lewis F. Lyne was plaintiff in judgment No. 168 Jan. T., 1887, for $7,000 against George P. Searight and F. W. Searight. Stuart was plaintiff in a later judgment against George P. Searight to No. 602 April T., 1887, for $75,558. In January, 1891, the real estate of George P. Searight was sold at sheriff's sale, and the whole amount of the Lyne judgment was paid out of the proceeds, leaving but $10,006.64 to be applied to the Stuart judgment. In the Lyne judgment the defendants were joint debtors, each owed the one half, and each was surety for the other ; but in the distribution George P. Searight's real estate was made to pay the debt of both. Stuart being thus deprived of his security on which his lien rested, asks to be subrogated to the right of the plaintiff in the Lyne judgment, to compel payment of F. W. Searight's share of the original liability for his indemnity. The auditor disallowed the claim, and his ruling is excepted to.

" I think it may be conceded that when George P. Searight's property had been taken to pay the entire debt, Stuart was in position—other things being equal—to require that F. W. Searight's estate should be subjected to the payment of his judgment, to the extent that he had been disappointed by the appropriation of the fund which had been pledged to him to another's advantage. The cases of Neff v. Miller, 8 Pa. 347 ; Gearheart v. Jordan, 11 Pa. 325 ; and Huston's Appeal, 69 Pa. 488, sustain this view. But other things then were far from being equal, as between these several debtors ; when $3,500 of George P. Searight's money was taken to pay F. W. Searight's portion of the Lyne judgment, the estate of the latter was fixed for a debt of George P. Searight amounting to $11,038, which he owed on a judgment No. 283 April T., 1885—revived to a later term—held by the Fidelity Insurance and Trust Co. [guardian of the Bosler minors], and on which F. W. Searight was surety. The sheriff's sale which swept away from Stuart the same estate which was the security of his judgment, demonstrated beyond all doubt, if such demonstration were needed, that the whole burden of the Trust Company's judgment for the debt of George P. Searight rested upon the estate of F. W. Searight. It would be a strange principle that, in such a state of facts, would allow George P. Searight to enforce the Lyne

judgment, for the recovery of any excess he may have paid them, without regard to the larger indebtedness which he himself owed. It would be just as inequitable to allow Stuart to do it, for, admitting his equity, it is entirely overcome by the superior equity in F. W. Searight's estate. His rights rise no higher than the rights of his judgment creditors. It is through the latter that he acquired whatever right he has, for, since the latter is first to feel the injury, it is to him the right first attaches. Though this be true, it does not always follow that the debtor may enforce the right. Who may enforce it depends upon the equities of the case, sometimes the debtor, sometimes the creditor, as the case may be; but in no case may the latter do what the former could not do with the right conceded to be in him. Allowing Stuart to succeed to all of George P. Searight's rights in the Lyne judgments, he would be entitled to get nothing therefrom, so long as the former remained indebted to F. W. Searight's estate a larger amount.

" The exceptions to the ruling of the auditor cannot be sustained and are accordingly dismissed.

. " The right of the Trust Company to participate in the distribution of the proceeds arising from the sale of the real estate is resisted on the ground that its judgment No. 283, April T., 1885, entered 11th March, 1885, was not revived, and consequently lost its position in favor of later judgments, which are now entitled to priority over it, and which are more than sufficient to exhaust the fund, and that this results, notwithstanding the death of the judgment debtor in 1888, and the sale of the real estate within five years thereafter. The contention is that the continuance of the lien of a judgment for five years from the death of the defendant therein, preserving whatever priority it may have, is dependent upon the act of Feb. 24, 1834, section 25; that as the law stood prior to the passage of that act, no judgment continued a lien with priority over subsequent judgments for a longer period than five years, unless within that period it was revived (act of 26th March, 1827); that the act of June 1, 1887, being a supplement to the earlier act of March 26, 1827, re-enacted it, and that the general affirmative words used therein, to wit, 'and no judgment shall continue a lien on such real estate for a longer period than five years from the day on which such judgment may be entered or revived,

etc.,' operate to repeal the act of Feb. 24, 1834, so far as it gave continuance of lien, and that since the passage of the act of June 1, 1887, nothing, not even death itself, can continue the lien of a judgment beyond five years without a revival.

"This argument would have much force were the act of June 1, 1887, an original act and not supplemental. Were such the case its effect would doubtless be to restore the law as it stood prior to 1834, since a subsequent statute, if it have nega-. tive words, is generally allowed to repeal the former. But the fact that it is supplemental is of great, if not controlling significance. We dare not overlook the fact that as an amend-: ment, to give it any validity at all, it was necessary to recite: in terms the original statute and re-enact it. The negative: words relied upon in the argument to effect the repeal are found in the original act. The purpose of their insertion in the act could not have been what is now sought to be gathered from the supplement, for, prior to that legislation, death did not operate to continue the rank of the judgment, with its lien, for five years, and therefore such a thing as repeal could not have been in contemplation, in re-enacting the law with these words left in it. Did the legislature intend that they should have a larger significance than they had in the original act? If not,: no artificial rule for the interpretation or construction of stat-. utes can give it to them. This supplement of 1887 became operative at once upon its passage. It is not too much to say that thousands of judgments were then rested upon no other security than that afforded by the act of 1834. Are we to assume that the legislature intended to sweep away the security from beneath them, supposing it had the power to do so, and leave them valueless? When such large results would follow, if the legislation were efficient to the end, the purpose to accomplish them, if not expressed in words, should be indicated by something more than a rule of construction. The supplemental act has a purpose clearly expressed in its last seven lines, which are the addition made to the original act and the only change made in it. They do not remotely relate to the question under consideration, but do go to show that they themselves constitute the amendment exclusively.

"The weakness of the counsel's argument is in giving to an artificial rule of construction greater force than to the act of

assembly itself.   It would use the rule, not as an aid to dis-
cover the purpose of the legislature, but to arbitrarily assign a
purpose, which not only is not expressed, but is negatived by
all the surrounding circumstances.   It applies the rule, to make
it accomplish certain results, and then insists that such results
were intended.   This would give to rules of construction the
force of constitutional law.   Certainly the language employed
in the supplement would support the contention of counsel,
were it not evident that the intention to repeal did not exist.
'A thing within the intention, is within the statute though
not within the letter; and a thing within the letter is not with-
in the statute unless within the intention:' People v. Insur-
ance Company, 15 Johns. 380.

"The conclusion of the auditor with respect to the right of
this judgment in the order of its priority is correct, and the
exceptions thereto are overruled."

*Errors assigned* were dismissal of exceptions on above rulings,
quoting them.

*John Hays, Stuart & Stuart* with him, for appellant.—Sub-
stitution or subrogation to the rights of a plaintiff in a judg-
ment or execution cannot be decreed in favor of a petitioner
until the creditor has received payment: Forest Oil Co.'s Ap.,
118 Pa. 138; Kyner v. Kyner, 6 Watts, 227; Graff, Bennett
& Co.'s Est., 27 W. N. 228; Bank v. Potius, 10 Watts, 148;
Miskimins's Ap., 114 Pa. 530.

Under the act of 1827, it was held that the lien of a judg-
ment, not revived within five years, expires as against another
judgment creditor, notwithstanding the death of the debtor
within five years: Fryhoffer v. Busby, 17 S. & R. 121; Dow-
ney's Ap., 2 Watts, 297; Bank v. Crevor, 2 Rawle, 224.   The
act of Feb. 24, 1834, §§ 24 and 25, so far as it relates to the
lien of the judgment, must be considered in pari materia with
the act of 1827, and as if forming a part of that act.

An affirmative statute does not repeal a prior one where the
two can be construed to stand together: Harrisburg v. Sheck,
104 Pa. 53; Newbold v. Pennock, 154 Pa. 591; Sifrid v. Com.,
104 Pa. 179; Bell v. Allegheny Co., 149 Pa. 381; Seifried v.
Com., 101 Pa. 200.

An affirmative statute repeals a former one by necessary implication where all the essential provisions in the former are supplied: Sifrid v. Com., 104 Pa. 179; Barber's Case, 86 Pa. 392; Martz's Case, 110 Pa. 502; Sharon Borough v. Hawthorne, 123 Pa. 106; Newbold v. Pennock, 154 Pa. 591; Ins. Co. v. Reading, 119 Pa. 417.

A negative statute repeals all prior statutes upon the same subject: Bubb v. Lycoming Co., 134 Pa. 112; Morrison v. Fayette Co., 127 Pa. 110; Murdock's Petition, 149 Pa. 341; Brown v. Comrs., 21 Pa. 43; Pittsburg v. Kalchthaler, 114 Pa. 552.

*Richard C. Dale* and *M. C. Herman, J. E. Barnitz* with them, for appellee.—The failure of a judgment creditor to revive and continue the lien of a judgment against the real estate of a principal debtor does not release the surety: Winton v. Little, 94 Pa. 64; U. S. v. Simpson, 3 P. & W. 437; Kindt's Ap., 102 Pa. 441; Mundorff v. Singer, 5 Watts, 172.

The act of 1834 was the statute framed by commissioners to govern and define the duties of executors and administrators in the settlement of decedents' estates. It had no bearing upon or connection with the act of 1827, which relates solely to the lien of judgments against the estates of living debtors. Since 1834 we therefore have had in Pennsylvania two separate subjects of judicial decision and legislative action, the one relating to the lien of judgments against the estates of living debtors, and the other relating to the lien of judgments against the estates of decedents.

The amendment of 1887 was not designed to change the law with reference to the duration of liens. The legislative purpose was to bring about, in the cases to which the act of 1887 was applicable, such changes of procedure as to give terre tenants holding title under a recorded deed notice of the revival of any judgment which should operate as a lien upon the land. It would evidently thwart the legislative intent to give to a statute intended thus to modify procedure in reviving the lien of a judgment against a life debtor the effect of changing the time during which judgments should operate as a lien upon the lands of a decedent. See also De Haven v. Medath, 7 Pa. C. C. R. 554.

OPINION BY MR. JUSTICE MITCHELL, July 12, 1894:

If it were necessary to consider appellant's right of subrogation to the Lyne judgment, the question might well be rested on the opinion of the learned judge below, which shows clearly the absence of any equity on which such subrogation could rest.  But even conceding the right, the Lyne judgment was junior to the Bosler lien if that was still alive against F. W. Searight's land.  The only question therefore is whether the Bosler judgment, having lost its lien against the land of G. P. Searight, the principal, still kept its hold on the estate of the surety, by virtue of the latter's death while it was an undisputed lien.

The question is settled by the cases of Winton v. Little, 94 Pa. 64; Kindt's Appeal, 102 Pa. 441; and Campbell v. Sherman, 151 Pa. 70, unless the law has been changed by the act of June 1, 1887, P. L. 289.

That act amends the act of March 26, 1827, P. L. 129, by adding a clause preventing the continuance of the lien of a judgment as against a terre tenant whose deed is recorded, unless he be named as terre tenant in the original scire facias. This appears to be the whole scope of the amendment, but in obedience to the constitutional requirement the act quotes the whole of section first of the act of 1827, and then re-enacts it in the same words, with the addition above mentioned.  In so doing it necessarily re-enacts the words "and no judgment shall continue a lien . . . . for a longer period than five years . . . . unless revived," etc., and the argument is strongly urged by appellant, first, that the act of February 24, 1834, continuing the lien of judgments against the lands of a decedent, being in pari materia, is repealed by the general negative words of the act of 1887, and, secondly, that it cannot be considered as excepted from such effect, and allowed to remain as an amendment to the act of 1827, because it is not "re-enacted and published at length" as required by section 6 of article 3 of the constitution.

The second proposition may be disposed of first.  The act of 1887 does not undertake to amend the act of 1834, and therefore did not need to repeat its terms.  The constitutional provision has reference to express amendments only.  Its object, like that of section two of the same article, requiring each

act to have its· subject clearly expressed in the title, was to secure, to the legislators themselves and others interested, direct notice, in immediate connection with proposed legislation, of its subject and purpose. The constitution does not make the obviously impracticable requirement that every act shall recite all other acts that its operation may incidentally affect, either by way of· repeal, modification, extension or supply. The harmony or repugnance of acts not passed with reference to the same subject can only be effectually developed by the clash of conflicting interests in litigation, and the settlement of such questions belongs to the judicial not the legislative department. No constitutional provision is involved in the present case.

The words of the act of 1887, " no judgment shall continue a lien," etc., are general and negative, and prima facie therefore repeal everything in conflict with them. But they are not to be extended to subjects not within the legislative intent. They are part of the act of 1827, and are re-enacted without change, pro forma, in order to add the subsequent provision about terre tenants. The act of 1827 in its turn adopted them from the act of April 4, 1798, 3 Sm. L. 331, under which they had been given their broadest effect by this court in Fryhoffer v. Busby, 17 S. & R. 121 ; Bank v. Crevor, 2 Rawle, 224, and other cases. The same construction was apparently given to the act of 1827, though the absence of reference to it, even in cases which arose after its passage, and the continued recurrence to the act of 1798 are not a little remarkable. See Downey's Appeal, 2 Watts, 297 ; Jack v. Jones, 5 Whart. 321, and Konigmaker v. Brown, 14 Pa. 269. In all of these cases it was held that, as against junior incumbrances, the lien of judgments expired in five years although the judgment debtor had died within that period.

The act of Feb. 24, 1834, sect. 25, P. L. 77, changed the law in such cases by declaring that the lien should continue to bind the estate for five years without revival, and during that term the judgments should rank according to their priority at the time of death. This act established a broad line of distinction between judgments against living defendants, the liens of which were limited to five years absolutely, and judgments against defendants who had subsequently died, the liens of which were ex-

tended five years from the date of death. The act of 1827 was a supplement to the act of 1798, and both dealt directly with the subject of judgments only. The act of 1834 was entitled "an act relating to executors and administrators," and not only its title, but its seventy carefully drawn sections show that it was intended to deal directly only with that subject, and touched the subject of judgments only incidentally in connection with the estates of decedents. The legislature therefore in 1887 had before it a clear distinction between classes of judgments, existing for more than half a century under separate statutes, and when under such circumstances it took up one of those statutes for amendment, we must assume that it legislated with that established distinction in view, until it shows a clear intention to disregard or abolish it. Notwithstanding therefore the generality and the negative character of the language of the act of 1887 we are of opinion it has not affected the act of 1834.

Decree affirmed.