## Davis's Estate.

*Orphans' court sale—Priority of liens—Distribution—Subrogation—Executors and administrators.*

1. Where a testator dies seized of real estate against which are the liens of four judgments, the first and second of which are owned by his wife whom he appointed executrix, and the executrix sells under a decree of the orphans' court a lot of land against which there is a mortgage junior only to her first judgment, and the proceeds are sufficient to pay the first judgment, the mortgage, the second judgment and a part of the third judgment, the widow may apply the proceeds to the payment of the mortgage, and the third judgment without losing her right, when she sells the remainder of the decedent's real estate, to pay out of the proceeds thereof her two judgments which she had postponed, although such payment will exhaust the fund, and leave nothing for the fourth judgment.

2. When there are several distinct parcels of land bound by the same incumbrance, even a judicial sale of one of them will not, necessarily, divest the incumbrance as to the others, unless there exist an equity calling imperatively on the creditor to look to the fund raised by the sale and he refuses to do so, after notice.

3. Generally an incumbrancer who enjoys the security of two estates or funds, possesses both the legal and the equitable right to resort to either for payment; and he may, therefore, rightfully forbear to collect his debt from the proceeds of the estate or property first converted.

4. A creditor whose judgment is the first lien upon two tracts of land, may permit the purchase money of one to be applied to the payment of junior lien creditors, unless the equitable rights of others are thereby prejudiced, and yet claim his whole debt out of the proceeds of a subsequent sale of the other tract.

Argued April 10, 1911. Appeal, No. 101, April T., 1911, by Mary Belle Davis, Executrix et al., from decree of O. C. Crawford Co., Feb. T., 1907, No. 34, confirming auditor's report in Estate of Myron Park·Davis, deceased. Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Exceptions to report of John A. Northam, Esq., auditor. The opinion of the Superior Court states the facts.

*Error assigned* was in confirming the report of the auditor.

*Manley O. Brown*, with him *Otto A. Stolz*, for appellant.—Where an executor pays a claim to the manifest advantage of the estate, especially when compelled to do so by execution, she will be protected by subrogation to the rights of the creditor so paid: Mustin's Est., 188 Pa. 544; Wallace's App., 5 Pa. 103; Robb's App., 41 Pa. 45; Miller's App., 119 Pa. 620.

The executrix by forbearing to pay her debt from the avails of the estate first converted, and allowing same to junior liens did not lose her lien on the balance of the estate or her right of priority over liens junior to that paid in the proceeds when converted: Konigmaker v. Brown, 14 Pa. 269; Uniontown Bldg. & Loan Assn.'s App., 92 Pa. 200; Horning's App., 90 Pa. 388.

*Frank J. Thomas*, with him *John O. McClintock*, for appellees.—Lien creditors, whose rights of priority among

themselves and as to other creditors, with regard to the proceeds of the sale of real estate, stand in line, and when one steps out, by lapse of lien, payment or any other cause, all those in the rear advance a step towards the proceeds: Indiana County Bank's App., 95 Pa. 500; Douglass's App., 48 Pa. 223; Fish's Est., 14 W. N. C. 566; Gring's App., 89 Pa. 336.

OPINION BY PORTER, J., July 13, 1911:

Myron Park Davis died seized of several parcels of real estate in the county of Crawford, and for the purposes of this case it is only necessary to state that one of the lots of land fronted on Chestnut street in the city of Meadville, and may be referred to as the Chestnut street property. The record liens upon his land at the time of his death stood in the following order, viz.: (1) A judgment of Lydia Rice, or use of Mary B. Davis v. Myron Park Davis, upon which there was due at the time of the sale hereafter mentioned the sum of $1,278.50, which was the first lien upon all the real estate of decedent; (2) a mortgage held by Frederick P. Hayes for $3,500, which was the second lien upon the Chestnut street property alone; (3) a judgment of Lydia S. Davis, for use of Mary B. Davis, upon which there was due at the time of the sale the sum of $1,645.75, which was a lien on all the real estate; (4) a judgment of Hattie Peterson v. Myron Park Davis and Lydia S. Davis, upon which there was due the sum of $4,667.42, which was a lien on all the real estate; and (5) a judgment held by J. W. Pease and Annie L. Miley for $1,353.90, which was a lien on all the real estate. The decedent left a will in which Mary B. Davis was named as executrix, and to her letters testamentary issued. The executrix, in March, 1907, presented a petition to the orphans' court for leave to sell the Chestnut street property for the payment of debts, the court granted the order prayed for, and a return of sale having been duly made the same was, on April 7, 1907, confirmed by the court. The amount of purchase money realized from this sale would·

have been sufficient, if it had been applied to the liens in the order of their priority, to have paid the first judgment, held by Mary B. Davis, use plaintiff, in her individual right and to have paid the Hayes mortgage, which was the second lien and to have paid also nearly the entire amount of the judgment held by Mary B. Davis, which was the third lien upon the property. Mary B. Davis, in her capacity as executrix, did not apply the proceeds of the sale of the Chestnut street property to the payment of the liens in the order of their priority; she passed by the judgments which she held in her individual right, which were liens, and paid taxes upon the property amounting to over $400, and paid the Hayes mortgage in full and also paid in full the Hattie Peterson judgment, which was subsequent in order of lien not only to the Hayes mortgage, but to the two judgments which she, Mary B. Davis, held in her individual right. It is proper here to observe that the taxes and liens to which she applied the payment of the proceeds of the Chestnut street property were all prior to the judgment held by J. W. Pease and Annie L. Miley, the appellees. The Hattie Peterson judgment having thus been paid out of the proceeds of the sale of the Chestnut street property was, on June 24, 1907, marked of record satisfied. The Hayes mortgage, having been thus paid, was also satisfied, but the date of such satisfaction does not clearly appear from the evidence. The executrix, on August 5, 1907, petitioned the orphans' court for an order to sell the remaining real estate of the decedent for the payment of debts, and the court on that day made such an order. The sum of $2,051 was realized from that sale, which sale was confirmed by the court on September 19, 1907.

The executrix filed an account, attached to and made part of which was an account distributing the proceeds of the sales of the real estate hereinbefore recited to the several lien creditors. Exceptions to this account were filed by John W. Pease and Annie L. Miley, holders of the judgment which was the fifth lien upon the Chestnut

street property and the fourth lien upon the other real estate, who asserted that by virtue of such lien they were entitled to receive a portion of the proceeds of the sale of the land. An auditor was appointed to pass upon these exceptions and after hearing evidence the auditor found the following material facts, which findings were sustained by the court in disposing of exceptions thereto filed by the present appellees. (1) The liens upon all the property were, at the time of the sale of the Chestnut street lot, in the order hereinbefore stated. (2) The judgment of Lydia Rice, for use of Mary B. Davis, being the first lien upon the Chestnut street lot, the sale of that lot divested the lien of the Hayes mortgage, which thereupon became entitled to participate in distribution of the proceeds of the sale. (3) The judgment of Hattie Peter- son v. Myron Park Davis and Lydia S. Davis was the fourth lien upon the Chestnut street lot and, as between the estate of decedent and Lydia S. Davis, the codefendant, the estate was legally and equitably liable to pay the sum of $2,333.71, being one-half the amount of the judgment. (4) The executrix had paid out of the proceeds of the sale of the Chestnut street lot, in June, 1907, the Hayes mortgage, the second lien on the lot and the Peterson judgment, the fourth lien, and as the result of such payment those liens were satisfied of record. These findings of fact by the auditor, sustained by the court below, were founded upon sufficient evidence, which was uncontradicted. The auditor found, as a conclusion of law, that the rights of the present appellees were not prejudiced by the application of the proceeds of the sale of the Chestnut street lot to the payment of the Hayes mortgage and the Peterson judgment, the second and fourth liens, thus passing by the prior judgments held by the executrix in her individual right, and that such prior judgments not having been paid had the right to come in upon and take the proceeds of the subsequent sales of the other real estate. The appellees filed exceptions to this report and after argument the court below sustained certain

exceptions as to the disposition of the personal property
and modified the report accordingly, but overruled the
exceptions to the findings and conclusion above stated
and sustained the actions of the auditor as to the dis-
tribution of the proceeds of the real estate, and a decree
to that effect was entered by the court on August 17, 1910.
The appellees then presented a petition for a reargument
and alleged as reasons therefor that the Rice judgment,
the Hayes mortgage and the Lydia Davis judgment
should have been paid in full out of the proceeds of the
sale of the Chestnut street lot, and that the Peterson
judgment could not legally be permitted to participate
in the distribution of the proceeds of the sale of that lot;
and that as the Peterson judgment had been satisfied
before the other real estate was sold it could not be con-
sidered in distributing the proceeds of the second sale and
that, for these reasons, the judgment of the appellees was a
first lien upon the land sold at the second sale and was
entitled to be paid out of the proceeds of that sale. The
learned judge of the court below, after a reargument of
the case, arrived at the conclusion that the contention
of the appellees was sound, set aside the decree first en-
tered, refused to allow the appellant credit for the $2,333.71
paid on account of the Peterson judgment out of the pro-
ceeds of the sale of the Chestnut street lot, restated the
distribution account and awarded to the appellees, on
account of their judgment, the sum of $1,202.87. The
result of this was to surcharge the accountant in the sum
of $2,333.71, and to deny the right which she asserted to
apply the sum of $1,202.87 to the payment of the judg-
ments which she held in her individual right, and to pay
the sum last named to the appellees. The surcharge is
against her as executrix and her right to appeal as execu-
trix cannot be questioned.

The contention of the appellees, in the court below and
here, has been that the judicial sale of the Chestnut street
property, and the receipt of the purchase money by the
executrix operated as a constructive payment of the liens

upon that property in the exact order in which they then
stood of record, that the executrix could not pass by the
judgments which she held in her individual right and
which were the first and third liens upon the property and
apply the proceeds of that sale to the second and fourth
liens. The able counsel for the appellees succeeded in
convincing the court below of the correctness of this view.
The learned judge in his opinion conceded that the exec-
utrix might properly pay the proceeds of the sale of the
Chestnut street lot to the holders of liens divested by the
sale, taking the risk that those to whom she paid it were
legally entitled to receive such proceeds. He held, how-
ever, that the limit of the right of this executrix to apply
the proceeds of that sale must be restricted thus, viz.:
"She would, therefore, be entitled to pay to herself the
two judgments, being the first and third in order, the sum
of $1,278.50 and $1,645.75, respectively, and would be
entitled to pay the Hayes mortgage, to wit, $5,595.40."

The ingenious argument of counsel for the appellees
entirely ignores the fact that in dealing with the proceeds
of the sale of the Chestnut street property the power of
the executrix to deal generally with that fund is not the
only element here to be considered. This executrix was
not dealing solely with strangers, she had individual
rights with regard to the judgments which were the first
and third liens on the property. The fact that she was
executrix, thus occupying a trust relation for the creditors
of the decedent, did not deprive her of any right with
which she was invested as the holder of the judgments
which were liens upon the land; she could assert any right
under those judgments which did not involve a violation
of her duty as trustee: Dyott's Estate, 2 W. & S. 463. The
judgments held by Mary B. Davis, in her individual
right, were liens upon all the real estate of the decedent.
When the Chestnut street property was sold the land
passed to the purchaser discharged of the lien of these
judgments; the proceeds of the sale, for the purposes of
lien, took the place of the land, but that did not operate,

per se, as the payment of any debt. When there are several distinct parcels of land bound by the same incumbrance, even a judicial sale of one of them will not, necessarily, divest the incumbrance as to the others, unless there exist an equity calling imperatively on the creditor to look to the fund raised by the sale and he refuses to do so, after notice. Generally, an incumbrancer who enjoys the security of two estates or funds, possesses both the legal and equitable right to resort to either for payment; and he may, therefore, rightfully forbear to collect his debt from the proceeds of the estate or property first converted. A creditor, whose judgment is the first lien upon two tracts of land, may permit the purchase money of one to be applied to the payment of junior lien creditors, unless the equitable rights of others are thereby prejudiced, and yet claim his whole debt out of the proceeds of a subsequent sale of the other tract. The authorities which recognize this principle are very numerous, a few of them being as follows: Addams v. Heffernan, 9 Watts, 529; Konigmaker v. Brown, 14 Pa. 269; Philadelphia v. Cooke, 30 Pa. 56; McDevitt & Hays's Appeal, 70 Pa. 373; Horning's Executors' Appeal, 90 Pa. 388; Uniontown Building & Loan Association's Appeal, 92 Pa. 200. That this principle is not novel is indicated by the decision in Bank of Pennsylvania v. Winger, 1 Rawle, 295 and that it has not become obsolete must be accepted as settled by Jennings v. Loeffler, 184 Pa. 318. The question presented by this record cannot be considered an open one. Mary B. Davis, acting in her individual capacity as the holder of the first and third liens, had the right to pass the fund arising from the sale of the Chestnut street property and permit that fund to be applied to the payment of the second and fourth liens, for the liens to which the money was applied were both prior in right to the judgment of the appellees. Having waived her individual right to participate in the proceeds of the sale of the Chestnut street property, it was entirely proper for her, as executrix, to pay the proceeds of that sale to the liens next in order, and

this she did. When the other real estate was subsequently sold the judgments held by Mary B. Davis were the first liens thereon and being unpaid were entitled to the proceeds of the sale. These appellees have no standing, in equity, to question the manner in which the proceeds of the sales, respectively, were distributed by the appellant, for their lien was junior to all of those which have participated in the distribution. When Mary B. Davis waived her right, under her judgments, to payment out of the proceeds of the Chestnut street property, she took the chances of enough being realized from the subsequent sale of the other property to pay her judgments, and if the second sale did not fully satisfy those judgments, the loss was necessarily her's, but her loss worked no injury to any right of these appellees. The specifications of error are sustained.

The decree of the court below, dated November 7, 1910, is reversed, and the record is remitted to the court below with direction to make distribution in accordance with the report of the auditor as modified and restated by the court below in the decree of August 17, 1910; and it is ordered that the costs of this appeal and all costs accruing in the court below subsequently to August 17, 1910, be paid by the appellees.